## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

KURT JAMES, JULIE STEWART, AND
ZAKER AHMED, *on behalf of themselves and all
others similarly situated,*

PLAINTIFFS,

V.

VENTURE HOME SOLAR, LLC,
VENTURE COMMERCIAL NYC, LLC, AND
VENTURE SOLAR COMMERCIAL, LLC,

DEFENDANTS.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

Case No. 21-CV-1306-CSH

**Honorable Charles S. Haight, Jr.**

## PLAINTIFFS' MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS' MOTION TO COMPEL ARBITRATION, DISMISS AND/OR STAY PROCEEDINGS

## **TABLE OF CONTENTS**

**Page**

INTRODUCTION ....................................................................................................... 1

FACTUAL BACKGROUND ...................................................................................... 2

LEGAL STANDARD ................................................................................................. 5

ARGUMENT ............................................................................................................... 6

    I.      PLAINTIFF JAMES' CLAIMS WILL PROCEED IN ARBITRATION .......... 6

    II.     THE COURT SHOULD NOT COMPEL ARBITRATION OF THE
CLAIMS BY STEWART AND AHMED *AGAINST VENTURE SOLAR* BASED
ON ARBITRATION AGREEMENTS *WITH SUNNOVA AND SUNPOWER*.... 6

          A.     Venture Solar Cannot Meet Its Burden Under Equitable Estoppel
Principles to Piggyback on Sunnova's and SunPower's Arbitration
Agreements with Stewart and Ahmed ....................................................... 9

                 *1.*     *Stewart's and Ahmed's Claims Are Not Intertwined with the Sunnova and
SunPower Agreements* .............................................................................. *10*

                 *2.*     *The Relationship Among Stewart, Ahmed, SunPower, Sunnova, and Venture
Solar Does Not Suggest Stewart and Ahmed Consented to Arbitrate with
Venture Solar Claims Related to Venture Solar's Marketing* ....................... *16*

                 *3.*     *The Ahmed-SunPower Agreement Expressly Strips an Arbitrator of the Power
to Award Any Relief For or Against Venture Solar, Evincing Additional
Indication That The Parties Did Not Intend to Arbitrate Claims in this Case* .............................................................................................................. *19*

CONCLUSION .......................................................................................................... 19

i

## **TABLE OF AUTHORITIES**

**Cases**                                                                                    **Page(s)**

*Abdurahman v. Prospect CCMC, LLC,*
    No. 20-3609, 2020 U.S. Dist. LEXIS 219732 (E.D. Pa. Nov. 24, 2020) ............................... 8

*B.F. v. Amazon.com Inc.,*
    No. C19-910 RAJ-MLP, 2020 U.S. Dist. LEXIS 63224 (W.D. Wash. Apr. 9, 2020) .......... 18

*Bensadoun v. Jobe-Riat,*
    316 F.3d 171 (2d Cir. 2003) ................................................................................................. 5

*Birmingham Assocs. v. Abbott Labs.,*
    547 F. Supp. 2d 295 (S.D.N.Y. 2008) ................................................................................ 10

*Calderon v. Sixt Rent a Car, LLC,*
    5 F.4th 1204 (11th Cir. 2021) ........................................................................................... 5, 8

*Carroll v. Leboeuf, Lamb, Greene & MacRae, L.L.P.,*
    374 F. Supp. 2d 375 (S.D.N.Y. 2005) ................................................................................ 11

*Cheng v. Modansky Leasing Co.,*
    539 N.E.2d 570 (N.Y. 1989) ................................................................................................ 8

*Choctaw Generation Ltd. P'ship v. Am. Home Assurance Co.,*
    271 F.3d 403 (2d Cir. 2001) .............................................................................................. 13

*Comer v. Micor, Inc.,*
    436 F.3d 1098 (9th Cir. 2006) .......................................................................................... 5, 8

*Conn. Gen. Life Ins. Co. v. Hous. Scheduling Servs.,*
    No. 3:12-cv-01456 (MPS), 2013 U.S. Dist. LEXIS 123128 (D. Conn. Aug. 29, 2013) .. 11, 18

*Doe v. Trump Corp.,*
    6 F.4th 400, 412 (2d Cir. 2021) .............................................................................. 5, 8, 10, 16

*Edible Int'l., LLC v. Google, LLC,*
    No. 3:18-cv-00216 (MPS), 2018 U.S. Dist. LEXIS 116651 (D. Conn. July 13, 2018) ...... 9, 17

*Fairmont Travel v. George S. May Int'l Co.,*
    75 F. Supp. 2d 666 (S.D. Tex. 1999) ................................................................................. 15

*Ferrie v. DirecTV, LLC,*
    No. 3:15-CV-409 (JCH), 2016 U.S. Dist. LEXIS 5081 (D. Conn. Jan. 12, 2016) ........... 9, 17

*Granite Rock Co. v. Int'l Bhd. of Teamsters,*
 561 U.S. 287 (2010) ............................................................................................... 8

*Hersh v. CitiMortgage, Inc.,*
 No. 2:13-cv-1344, 2013 U.S. Dist. LEXIS 180926 (W.D. Pa. Dec. 30, 2013) ...................... 15

*In re Henson,*
 869 F.3d 1052 (9th Cir. 2017) ............................................................................. 13

*In re Toyota RAV4 Hybrid Fuel Tank Litig.,*
 534 F. Supp. 3d 1067 (N.D. Cal. 2021) ............................................................... 15

*JLM Indus. v. Stolt-Nielsen SA,*
 387 F.3d 163 (2d Cir. 2004) .......................................................................... 9, 17

*Local 1199, Drug, Hosp. & Health Care Emples. Union v. Brooks Drug Co.,*
 956 F.2d 22 (2d Cir. 1992) ................................................................................ 19

*Meyer v. Uber Techs., Inc.,*
 868 F.3d 66 (2d Cir. 2017) .................................................................................. 5

*Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.,*
 460 U.S. 1 (1983) ........................................................................................... 5, 8

*Ngo v. BMW of N. Am., LLC,*
 No. 20-56027, 2022 U.S. App. LEXIS 889 (9th Cir. Jan. 12, 2022) ........................... *passim*

*Ragone v. Atl. Video,*
 595 F.3d 115 (2d Cir. 2010) ............................................................................. 17

*Ross v. Am. Express Co.,*
 547 F.3d 137 (2d Cir. 2008) ............................................................................. 11

*Schnabel v. Trilegiant Corp.,*
 697 F.3d 110 (2d Cir. 2012) ............................................................................... 5

*Smith v. Seeco, Inc., No. 4:14-CV-00435 BSM,*
 2017 U.S. Dist. LEXIS 221667 (E.D. Ark. Mar. 21, 2017) ................................... 16

*Sokol Holdings, Inc. v. BMB Munai, Inc.,*
 542 F.3d 354 (2d Cir. 2008) ........................................................................ 5, 9, 10

*Texaco, Inc. v. Rogow,*
 190 A.2d 48 (Conn. 1963) ................................................................................. 8

*United States ex rel. CMC Steel Fabricators v. Harrop Constr. Co.,*
 131 F. Supp. 2d 882 (S.D. Tex. 2000) ............................................................... 15

iii

*Westburg v. Good Life Advisors, LLC, No.*
     18cv248-LAB (MDD), 2018 U.S. Dist. LEXIS 180134 (S.D. Cal. Oct. 18, 2018) .............. 19

## INTRODUCTION

The Venture Solar defendants are rooftop solar sales companies who solicited Plaintiffs and the putative class with the promise of significant utility "offsets" on their electric bills.  But Venture Solar's lofty promises were undeliverable.  Now, Defendants are asking this Court to sweep their false advertising and deceptive sales practices under the rug by sending this matter to confidential arbitration proceedings, even though two of the Plaintiffs never agreed to such dispute resolution with Venture Solar.

Named Plaintiffs Kurt James, Julie Stewart, and Zaker Ahmed were all on the receiving end of Venture Solar's misleading advertising before Venture Solar installed solar arrays on their homes.  James bought his system outright and directly entered into a contract with Venture Solar containing an arbitration clause; Plaintiffs concede his claims will go to arbitration.

The claims of Plaintiffs Stewart and Ahmed are a different story entirely.  Neither signed any agreement with Venture Solar (who marketed and installed their panels), and they are not bound to arbitrate their claims against Venture Solar.  Indeed, these two Plaintiffs' contracts with non-parties expressly limited application of those agreements only to the contracting parties (and even worse as it relates to one of them (SunPower), that agreement explicitly prohibits an arbitrator from "award[ing] relief for or against anyone who is not a party," like Venture Solar.).  Venture Solar's attempts to latch on to a non-party contractual stranger's arbitration clause is clearly barred by Second Circuit precedent.  This is because it is settled law that arbitration is a matter of agreement, and parties cannot be forced to arbitrate matters where they have not previously agreed to do so.  And Venture Solar's attempt to tightly squeeze within the limited equitable estoppel exception fails because Plaintiffs' claims are not intertwined with the only agreements they signed and because the relationships involved here (contractually and the parties to the litigation) do not suggest Plaintiffs consented to extend the arbitration provision to Venture

1

Solar as it relates to the deceptive marketing claims asserted here. Simply put, Stewart and Ahmed never agreed to arbitrate their disputes with Venture Solar, and the motion to compel arbitration as to those two Plaintiffs must be denied.

## FACTUAL BACKGROUND

Plaintiffs Kurt James, Julie Stewart, and Zaker Ahmed filed this putative class action against Venture Home Solar, LLC ("Venture Solar") and Venture Solar Commercial, LLC ("Venture Commercial") (collectively, "Venture Solar"). (Complaint, ECF No. 1). Plaintiffs allege Venture Solar promised each Plaintiff and Class member that they would benefit from significant (if not complete) savings – "offsets" – on their electricity usage charges. (*Id.* at ¶ 2).

Plaintiffs allege that Defendants presented their claim of significant utility "offsets" in their marketing materials and also memorialized in form contracts with third parties:

## venture solar

| 5000 kWh<br>Annual Usage | 5,148 kWh<br>Annual Production | Over 100%<br>Utility Offset | $0<br>Upfront Payment |
|---|---|---|---|

| | Utility | Solar | Your System |
|---|---|---|---|
| Rate per kWh | $.22 | $0.15 | • Sunnova solar service always includes 25 years of repairs, maintenance, insurance, and monitoring. |
| Average Bill | $92 | $66 | • Sunnova monthly payment includes a $15 discount for enrolling in automatic payments. |
| Total Savings | $0 | $22,313 | • 2.9% annual increase. |

Solar done *right.*

venturesolar.com
800-203-4158

### Congratulations!

You're on the way to saving with solar.

## venture solar

| | | | |
|---|---|---|---|
| $14,724 | Upfront Payment | 5238 | kWh Annually |
| 0% | Annual Increase | $0 | Monthly Payment |
| 105% | Utility Offset | $3,831.75 | Federal Tax Credit |

2

(*Id.* at ¶ 23).  A substantial utility offset number, which translates to a significant amount of cost savings to the consumer, is a material term in inducing consumers to purchase or lease a system.  (*Id.* at ¶¶ 24-25).  Defendants pitched their deceptive marketing scheme to thousands of people in effectively the same way.  (*Id.* at ¶ 26-28).

Plaintiffs did not receive an offset on most, if not all, of the electricity bills they received after they started using the solar power systems marketed by Defendants.  (*Id.* at ¶ 16).  Plaintiffs allege that Defendants' conduct constitutes a deceptive trade practice that caused them and the Class to be deceived and deprived of significant amounts of money.  (*Id.* at ¶ 5).

On December 30, 2021, Defendants filed a Motion to Compel Arbitration and/or Stay Proceedings.  (ECF No. 31).  Defendants contend that the claims of the three named Plaintiffs should be sent to private arbitration, and attach three documents as exhibits:

A. "Solar Electric Installation Contract − Connecticut" signed by Venture Solar and Plaintiff James, dated January 29, 2020.  (ECF No. 31-3);

B. "Solar Power Purchase Agreement" signed by Plaintiff Stewart and Sunnova Energy Corporation, dated January 21, 2020. (ECF No. 31-4);

C. "Solar Lease" which is unsigned and purports to be between Plaintiff Ahmed and SunPower Capital, LLC, dated November 10, 2017. (ECF No. 31-5).

All these agreements contain an arbitration clause in one form or another.  The clauses are all different.  The agreements speak for themselves.  As such, Plaintiffs only highlight aspects of the subject agreements that are pertinent to the instant motion.

### *The James − Venture Solar Agreement*

The arbitration clause in the agreement between Plaintiff James and Venture Solar reads:

In the event of a dispute, both you and we have the right to have the dispute resolved in a court of law. In this dispute resolution provision, you and we are agreeing to limit that right. If there is a dispute, then both you and we must seek resolution of the dispute in either arbitration or small claims court. If your dispute cannot be resolved in small claims court for any reason, then you must seek resolution of your dispute in arbitration. This dispute resolution agreement does not alter any

substantive rights that you may have under state or federal law. By signing below, you agree to comply with this dispute resolution provision, which describes both your and our only procedure for resolving any dispute. Only the arbitrator, not any federal, state, or local court or agency, has the authority to interpret this provision or determine its enforceability. If any provision of this dispute resolution provision is found to be unenforceable for any reason, such provision will be severed and the remainder of this dispute resolution provision will continue in full force and effect.

(ECF No. 31-3).

### *The Stewart – Sunnova Energy Corporation Agreement*

This second agreement is a power purchase agreement ("PPA") signed only by Plaintiff Stewart and non-party Sunnova Energy Corporation.  (*See* Yackery Decl. Ex. B, ECF No. 31-4 at p. 31 of 33).  The PPA states it "is the agreement between [Stewart] and Sunnova Energy Corporation (together with its successors and assigns, 'Sunnova' or 'we'), covering the sale to [Stewart] of the power produced by the solar panel system…." (*Id.*).  The PPA's arbitration clause further defines to whom it applies: "Unless the context requires otherwise, the words "we," "us," and "our" mean Sunnova and any assignee of this PPA." (*Id.* at 14 of 33).  The record is lacking any facts indicating Venture Solar is a successor or assign of the PPA.

### *The Ahmed – SunPower Capital, LLC Agreement*

The third agreement is the lease between only Plaintiff Ahmed (named as "Lessee") and non-party SunPower Capital, LLC (named as "Lessor").  (Yackery Decl. Ex. C § 1, ECF No. 31-5).  This agreement mentions Venture Solar as the "Dealer/Installer." (*Id.*).  The Introduction of the lease reads:

> "This solar lease (this "Lease") is the agreement between [Ahmed] and SunPower Capital, LLC (together with its successors and assigns, 'Lessor,' 'We,' 'Us,' or 'Our'), covering the lease to [Ahmed] of the solar panel system (the 'System') described below. Although the System will be installed at the installation location address listed above by the Dealer/Installer identified above, this Lease is a lease only and not a contract for construction."

(ECF No. 31-5 at p. 4 of 28).  The lease's arbitration clause states "Only Disputes involving

you and Us may be addressed in the arbitration." (*Id.* at p. 13 of 28). It goes on: "The arbitrator will not award relief for or against anyone who is not a party." (*Id.*). Like the Stewart agreement, the record is lacking any facts indicating defendant Venture Solar is a successor or assign of the Lease.

## LEGAL STANDARD

Courts compel arbitration under the Federal Arbitration Act only where a valid agreement between the parties to arbitrate exists. *Schnabel v. Trilegiant Corp.*, 697 F.3d 110, 118 (2d Cir. 2012). As such, "the threshold question . . . is therefore whether the parties have indeed agreed to arbitrate." *Id.* "[A]n obligation to arbitrate can be based only on consent." *Sokol Holdings, Inc. v. BMB Munai, Inc.*, 542 F.3d 354, 358 (2d Cir. 2008). The federal liberal policy favoring arbitration does not apply to contract formation or non-signatory issues; such policy only applies to the *scope* of arbitrable *issues* (arbitrability), which is determined after an agreement between the parties to arbitrate in the first place has been established. *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24-25 (1983)); *Calderon v. Sixt Rent a Car, LLC*, 5 F.4th 1204, 1213 (11th Cir. 2021); *Comer v. Micor, Inc.*, 436 F.3d 1098, 1104 n.11 (9th Cir. 2006).

"Courts deciding motions to compel arbitration apply a standard similar to that applicable for a motion for summary judgment, . . . consider[ing] all relevant, admissible evidence . . . and draw[ing] all reasonable inferences in favor of the non-moving party." *Meyer v. Uber Techs., Inc.*, 868 F.3d 66, 74 (2d Cir. 2017). "If there is an issue of fact as to the making of the agreement for arbitration, then a trial is necessary." *Bensadoun v. Jobe-Riat*, 316 F.3d 171, 175 (2d Cir. 2003); *Meyer*, 868 F.3d at 74 ("If a factual issue exists regarding the formation of the arbitration agreement, however, remand to the district court for a trial is necessary."); *Schnabel*, 697 F.3d at 118 (same).

Although "state law governs whether a non-signatory may enforce an arbitration clause," *Doe v. Trump Corp.*, 6 F.4th 400, 412 n.8 (2d Cir. 2021), where, as here, the parties do not contend a particular state's law applies, this Court may apply Second Circuit precedent, *see id.* at 412 ("The district court . . . relied on Second Circuit law, which incorporates general principles of contract law, because both parties vigorously contended that Second Circuit law applied. . . . We therefore proceed with the equitable estoppel inquiry as governed by Second Circuit precedent.").

## ARGUMENT

## I.    PLAINTIFF JAMES' CLAIMS WILL PROCEED IN ARBITRATION

Unlike Plaintiffs Stewart and Ahmed, who never agreed to arbitrate with Defendants, Plaintiff James directly entered into an agreement with Venture Solar which contains an arbitration clause.  (ECF No. 31-3).  Plaintiffs concede that the claims asserted by James are subject to arbitration and they will be filed in a private arbitration forum.  Plaintiffs ask this Court to stay this matter as to James only.

## II.   THE COURT SHOULD NOT COMPEL ARBITRATION OF THE CLAIMS BY STEWART AND AHMED *AGAINST VENTURE SOLAR* BASED ON ARBITRATION AGREEMENTS *WITH SUNNOVA AND SUNPOWER.*

The Stewart-Sunnova and Ahmed-SunPower arbitration agreements do not cover the deceptive marketing consumer protection claims against Venture Solar here.  Venture Solar was not a party to either of those contracts, and the text of those contracts indicate no intention to extend the arbitration provisions to Venture Solar in the event of a dispute.  To the contrary, the agreements explicitly sweep in only successors and assigns, to the exclusion of all others (including, e.g., installers, marketers, etc.).

The contracts themselves make it clear that their plain terms do *not* apply to Venture Solar.  The Stewart-Sunnova agreement reads, in relevant part, "*You* and *we* agree that any

dispute, claim or disagreement between *you* and *us*."  (Yackery Decl. Ex. B § 19 (emphases

added), ECF No. 31-4).  "You . . . mean[s] any person signing this PPA as a Homeowner or Co-

Homeowner."  (*Id.*).  And ""we," "us" and "our" mean Sunnova and any assignee of this PPA."

(*Id.*).  Venture Solar is neither Sunnova nor an assignee of the Stewart-Sunnova agreement, and

thus the arbitration agreement cannot apply to it.  Similarly, the Ahmed-SunPower agreement

limits the "agree[ment]" to arbitrate to "You and We."  (Yackery Decl. Ex. C § 17, ECF No. 31-

5).  In turn, "you" is undefined and is reasonably meant to identify the consumer/purchaser.  (*Id.*

§ 1).  And "We" means "SunPower Capital, LLC (together with its successors and assigns").  (*Id.*).

And, indeed, lest it otherwise not be clear, the Ahmed-SunPower contract explicitly provides that

the arbitrator could not even award relief against Venture Solar:  "The arbitrator will not award

relief for or against anyone who is not a party."  (Yackery Decl. Ex. C § 17).

      Had these two contracts been intended to bind installers/marketers like Venture Solar to

arbitrate, they very easily could have said so.  Instead, installers were explicitly excluded from the

clauses, and Venture Solar is left asking the Court to *imply* that it is subject to what it sees as

ambiguous arbitration agreements.  *See*, *e.g.*, *Ngo v. BMW of N. Am., LLC*, No. 20-56027, 2022

U.S. App. LEXIS 889 at *17 __ F.4th __ (9th Cir. Jan. 12, 2022)[1] ("Nothing in the contract here

evinces any intention that the arbitration clause should apply to BMW. The arbitration clause's

enforcement provisions are limited to the dealership, the assignee, and Ngo. The compelling

inference from this arrangement is that the parties knew how to give enforcement powers to non-

signatories when they wished to do so but gave none to BMW.").  But these contracts were

drafted by sophisticated commercial parties.  Venture Solar, also a sophisticated commercial

entity, could have bargained to be included within the sweep of these agreements with the

---

[1]  The *Ngo* decision was written by the Honorable Barrington D. Parker, United State Circuit Judge for
the Second Circuit, sitting by designation.

consumers.  These contracts should be construed strictly against the corporate defendants here. *See*, *e.g.*, *Abdurahman v. Prospect CCMC, LLC,* No. 20-3609, 2020 U.S. Dist. LEXIS 219732, at *14-15 (E.D. Pa. Nov. 24, 2020) ("Construing the contracts against their sophisticated drafters, the legal entities here relied on "corporate technicalities" to attenuate the relationship between them. The contracts [plaintiff] signed were drafted to include one entity as the signatory on one agreement, and another entity as signatory on another agreement. . . . Had [defendant] intended to arbitrate its disputes with [plaintiff], it could have embedded an arbitration clause in the contract governing her residency."); *Cheng v. Modansky Leasing Co.*, 539 N.E.2d 570, 573 (N.Y. 1989)*; Texaco, Inc. v. Rogow*, 190 A.2d 48, 52 (Conn. 1963) (general contract interpretation rule of construction against the drafter).

By contrast, Stewart and Ahmed are entitled to a liberal interpretation, considering their relative unsophistication (compared to the corporate drafters) and there is nothing in these contracts saying the consumers are giving up their constitutional right to a jury trial against non-signatory Venture Solar.  The oft-stated "federal policy favoring arbitration" does not trump general principles of state contract law where the court is determining whether parties even consented to formation of an arbitration agreement in the first instance.  *Granite Rock Co. v. Int'l Bhd. of Teamsters*, 561 U.S. 287, 299–300 (2010); *Moses H. Cone*, 460 U.S. at 24-25; *Calderon*, 5 F.4th at 1213; *Comer*, 436 F.3d at 1104 n.11.

Venture Solar asserts that its "relationship with [Stewart and Ahmed] is based solely on these agreements," ignoring the failure of the contracts to include them.  (Venture Solar Mov. Br. 2, ECF No. 31-1).  This contention is simply false and in direct conflict with the allegations of the Complaint.  Stewart's and Ahmed's contracts with Sunnova and SunPower, respectively, do not give rise to Plaintiffs' claims against *Venture Solar* for its *deceptive marketing practices*, which is what the parties' relationship is based on, not the contracts Plaintiffs had with other entities *after* Venture

8

Solar misleadingly marketed and enticed Plaintiffs into purchasing solar panel systems.  (Compl. ¶¶ 17-19, 26-28, 34, 39).  Those contracts merely memorialized the offset amount the consumer would receive.  (*Id.* at ¶¶ 22, 28, 35, 40).

The agreements and relationships here are clearly not the traditional ones where courts compel arbitration where the parties are in direct contractual privity,[2] or even, one step further removed, where either a parent or subsidiary is a signatory to an agreement but the non-signatory entity seeks to piggyback on the signatory based on their corporate closeness as parent-subsidiary.[3]  Here, Venture Solar is not in the corporate family (in any way whatsoever) of SunPower or Sunnova (nor does it contend it is).

### A.   Venture Solar Cannot Meet Its Burden Under Equitable Estoppel Principles to Piggyback on Sunnova's and SunPower's Arbitration Agreements with Stewart and Ahmed

Inasmuch as the contracts are not with Venture Solar, Defendants desperately argue equitable estoppel.  But "an obligation to arbitrate can be based only on consent."  *Sokol*, 542 F.3d at 358.  In determining consent in the equitable estoppel/non-signatory context, courts look to certain contextual facts to determine, essentially, whether there was "an agreement implied in fact."  *Id.* at 362 (quoting *Grigson v. Creative Artists Agency, L.L.C.*, 210 F.3d 524, 533 (5th Cir. 2000) (Dennis, J., dissenting)).

For equitable estoppel to compel arbitration, it is "essential . . . that the subject matter of the dispute [be] intertwined with the contract providing for arbitration."  *Id.* at 361.  "Indeed, if the dispute [is] not [] related to the arbitration contract, even a dispute between the parties who

---

[2]   *See, e.g.*, *Edible Int'l., LLC v. Google, LLC*, No. 3:18-cv-00216 (MPS), 2018 U.S. Dist. LEXIS 116651, at *1-2, 11-12 (D. Conn. July 13, 2018) and *Ferrie v. DirecTV, LLC*, No. 3:15-CV-409 (JCH), 2016 U.S. Dist. LEXIS 5081, at *9, 40-41 (D. Conn. Jan. 12, 2016).

[3]   *See, e.g.*, *JLM Indus. v. Stolt-Nielsen SA*, 387 F.3d 163, 177-78 (2d Cir. 2004).

contracted with one another to arbitrate . . . would not [be] arbitrable." *Id.*  Additionally, the

"relationship among the parties" must "ma[k]e it inequitable for [the signatory] to refuse to

arbitrate on the ground that it had no agreement with [the non-signatory]." *Id.*  "This does not

mean, however, that whenever a relationship of any kind may be found among the parties to a

dispute *and their dispute deals with the subject matter of an arbitration contract made by one of them*, that party

will be estopped from refusing to arbitrate." *Trump*, 6 F.4th at 412 (quotation marks and citations

omitted) (emphasis added).  The test attempts to determine whether the party opposing

arbitration consented to extend its obligation to arbitrate to

> a non-signatory *related to* [a signatory], an entity that was, or would predictably
> become, with the knowledge and consent of the party opposing arbitration,
> affiliated or associated with the other signatory in such a manner as to make it unfair
> to allow the party opposing arbitration to avoid its commitment to arbitrate on the
> ground that the non-signatory was not the very entity with which the party opposing
> arbitration had a contract.

*Id.* at 413 (brackets omitted) (emphasis added).

Otherwise, "[t]here is no unfairness in denying estoppel to a third-party wrongdoer

aligned with a signatory in effectuating allegedly wrongful business practices." *Id.* at 414.  "The

plaintiff's *actual dependence* on the underlying contract in making out the claim against the

nonsignatory defendant is therefore always the sine qua non of an appropriate situation for

applying equitable estoppel." *Birmingham Assocs. v. Abbott Labs.*, 547 F. Supp. 2d 295, 301

(S.D.N.Y. 2008) (emphasis in original).

### 1. Stewart's and Ahmed's Claims Are Not Intertwined with the Sunnova and SunPower Agreements

The Second Circuit has generally found the intertwining factor established only where

"the plaintiff's claims depended in *substantial part* on the existence of an agreement containing an

arbitration clause." *Birmingham*, 547 F. Supp. 2d at 302 (emphasis added) (citing Second Circuit

cases dealing with non-signatory equitable estoppel arguments).  And "[t]he degree of

interrelatedness necessary to allow a non-signatory to compel arbitration is extremely fact dependent." *Carroll v. Leboeuf, Lamb, Greene & MacRae, L.L.P.*, 374 F. Supp. 2d 375, 378 (S.D.N.Y. 2005). Despite Venture Solar's assertion otherwise, the Second Circuit has made clear that simply showing a "signatory's claims arise under the subject matter of the underlying agreement" is not enough:

> It is indisputable that the subject matter of the dispute between the parties . . . is related to the subject matter of the [arbitration] agreements the plaintiffs signed with the Issuing Banks. . . . But the further necessary circumstance of some relation between [non-signatory] Amex and the plaintiffs sufficient to demonstrate that the plaintiffs intended to arbitrate this dispute with Amex is utterly lacking here.

*Ross v. Am. Express Co.*, 547 F.3d 137, 146 (2d Cir. 2008).

Plaintiffs' claims are also not intertwined with the contract because Plaintiffs do not assert any breach of contract claims. (*See* Compl. ¶¶ 51-86 (Claims for Relief)). The Complaint has no language whatsoever claiming anybody breached any contract. The claims here are purely for deceptive marketing practices in violation of the state consumer protection laws, and they are only against Venture Solar, a non-party to both Stewart-Sunnova and Ahmed-SunPower arbitration agreements. The Court should not be persuaded by Venture Solar's suggestion that simply because the offset amounts were memorialized in the agreements with Sunnova and SunPower, somehow that means "Plaintiffs' claims are bound up with *the terms* of the Sunnova and SunPower Agreements," and thus "it is difficult to see how this action could unfold without the contracts playing a starring role." (Venture Solar Mov. Br. 18 (emphasis added)). As repeated throughout, Plaintiffs' claims of deceptive marketing are not based on the agreements. Venture Solar's reliance on *Conn. Gen. Life Ins. Co. v. Hous. Scheduling Servs.*, No. 3:12-cv-01456 (MPS), 2013 U.S. Dist. LEXIS 123128 (D. Conn. Aug. 29, 2013) is thus misplaced. That case involved an ERISA claim based on a fraudulent billing scheme that was premised on a contract

11

that had set rates for medical services the plaintiff insurance company would pay[4] to participating providers providing in-network services to plaintiff's members.  *Id.* at *1-3.  The court there also noted that defendants "will surely raise the contracts as part of their defense . . . to argue that they should not . . . be required to reimburse [p]laintiffs for all amounts paid, but only for those amounts above and beyond those permitted by the contracts."  *Id.* at *29-30.  All of this meant it would be "difficult to see how th[e] [case] could unfold without the contracts playing a starring role."  *Id.* at *29.

Here, at most, the contract can arguably be relevant (not necessarily material) in only two ways: (1) serving as contemporaneous evidence memorializing Venture Solar's marketing of an offset to Plaintiffs; and (2) showing Venture Solar was the installer of the solar panel system it marketed but was sold or leased by Sunnova and SunPower.  Stewart and Ahmed assert no relevant obligations on Venture Solar's part under the agreements.  Even Venture Solar's role as an installer was not necessarily an obligation directly to Stewart and Ahmed; rather, the agreements' plain terms envision Sunnova and SunPower being responsible for such an obligation but subcontracting Venture Solar to fulfill it for them.  (Yackery Decl. Ex. B § 1 ("The System will be installed by Sunnova or a subcontractor acting on Sunnova's behalf"); Yackery Decl. Ex. C § 1 ("the System will be installed . . . by [Venture Solar]"); *id.* ("We will ensure our authorized installer [Venture Solar] performs design, permitting, construction, installation, testing, and activation of the System on your Home.")).

---

[4]  Technically, the plaintiff was not a signatory to the relevant contracts but was an affiliate of the entity that signed said contracts.  *Id.* at *4.  And because the plaintiff conceded it was an intended third-party beneficiary of the contracts and because its claim about compensation was based on the rates set forth in those contracts, the court treated plaintiff as a party to the contracts for the purposes of the analysis.  *Id.* at *4, 19-20.  This is irrelevant for the purposes of our case because Stewart and Ahmed do not dispute they signed the agreements with Sunnova and SunPower.

Venture Solar's reliance on *Choctaw Generation Ltd. P'ship v. Am. Home Assurance Co.*, 271 F.3d 403 (2d Cir. 2001), is also entirely unpersuasive.  What Venture Solar fails to mention about *Choctaw* is that the non-signatory and the signatory to the Construction Contract there (which had the arbitration agreement) had their own contract (a surety contract), and the latter contract *incorporated by reference the entirety of the Construction Contract*.  *Choctaw*, 271 F.3d at 405-06.  Most plainly, that is not the case here – Venture Solar could have (but did not) set up such a relationship.  Additionally, the Construction Contract noted a "duty to replenish a letter of credit maintained under the Construction Contract," *id.* at 406 and that was indeed what was in dispute in the case (whether non-signatory defendant was required to replenish the letter of credit), *id.* at 403.  This is quite different from the instant case where Stewart and Ahmed are not bringing claims related to Venture Solar's installation of solar panels (the only thing it is specifically noted to do, as acknowledged by Venture Solar, (Venture Solar Mov. Br. 19)).  To be clear, Plaintiffs do not complain Venture Solar performed shoddy installation services; but rather that they engaged in *deceptive marketing practices* to induce the sale.  (Compl. ¶¶ 17-19, 26-28, 34, 39).

This case is most analogous to the recent case of *Ngo v. BMW of N. Am., LLC*, No. 20-56027, 2022 U.S. App. LEXIS 889, __ F.4th __ (9th Cir. Jan. 12, 2022).  In *Ngo*, the Ninth Circuit (in a decision written by Second Circuit Judge Barrington D. Parker, sitting by designation) held where a consumer purchased a BMW from a non-BMW car dealership, and signed a purchase agreement which left out BMW as a party but only included BMW's financing entity as an assignee, non-signatory BMW could not compel the consumer to arbitrate its claims against it.  2022 U.S. App. LEXIS 889 at *14-17.[5]  In holding that the consumer's warranty

---

[5] Although *Ngo* was decided under California law, "there is no material difference between New York and California's equitable estoppel laws."  *In re Henson*, 869 F.3d 1052, 1060 (9th Cir. 2017).

claims were not "intimately founded in and intertwined with" the "purchase agreement," the Ninth Circuit reasoned that the purchase agreement "only proves the existence of the retail sale" and that the consumer's standing to bring claims against BMW did not "derive from the purchase agreement," but rather "BMW was not a party to the agreement and its obligations to [plaintiff] arose independently of [it]."  *Id.* at *15-17 (ellipses omitted); *see also id.* at *13 (noting in the third party beneficiary section of the decision "[n]othing in the contract here evinces an intent any intention that the arbitration clause should apply to BMW. . . . [T]he parties knew how to give enforcement powers to non-signatories when they wished to do so but gave none to BMW.").

Similarly, here, Stewart's and Ahmed's contracts with Sunnova and SunPower, respectively, do not give rise to Plaintiffs' claims against *Venture Solar* for their *deceptive marketing practices*.  (Compl. ¶¶ 17-19, 26-28, 34, 39).  Those contracts merely memorialized the offset amount the consumer would receive and reflected the purchase or lease of a solar panel system. (*Id.* at ¶¶ 22, 28, 35, 40).  The Court should also ignore Venture Solar's characterization (without citation) of the purchase or lease agreements as "contracts for the installation of solar panels." (Venture Solar Mov. Br. 7).  The fact that Venture Solar is listed as the installer does not transform these contracts into installation contracts.  If these were indeed installation contracts one would wonder (1) why Sunnova or SunPower are even parties (as they are not installers); (2) why Venture Solar is not a named party to the agreement (even though it is the installer); (3) why the Sunnova contract is called a "Solar Power Purchase Agreement," (Yackery Decl. Ex. B § 1); (4) why the SunPower contract is called a "solar lease," (Yackery Decl. Ex. C § 1; *accord id.* ("Although the System will be installed . . . by [Venture Solar], this [Agreement] is a lease only and not a contract for construction.")), as well as many other issues presented by even a quick glance at the agreements.  Again, these contracts reflect the purchase or lease of a solar panel

14

system from SunPower or Sunnova, which may have been *marketed* by Venture Solar but which also may have been marketed by another entity, like SunPower or Sunnova themselves or a competitor of Venture Solar.

This is the reason why Plaintiffs have not asserted any *breach of contract* claims *against Venture Solar*. If Plaintiffs sued Venture Solar for breach of the contracts they had with Sunnova and SunPower due to deceptive marketing, Venture Solar would undoubtedly respond that they were merely the installer under those contracts and not a party thereunder promising anything. (*See, e.g.*, Venture Solar Mov. Br. 18 ("Venture Solar was explicitly named in the agreements as having a *specific task* to perform, namely, the *installation* of the solar panels." (Emphases added))). As such, these contracts merely "prove[] the existence of the retail sale [or lease]." *Ngo*, 2022 U.S. App. LEXIS 889 at *17; (Compl. ¶ 28).

Venture Solar's duty to refrain from violations of consumer protection laws is independent of any contract consumers may have with a third party memorializing the purchase or lease of the product or service. This is well-settled in the case law even where plaintiff and defendant *have* contractual privity, let alone one where they do not and where most (if not all) duties are necessarily independent of a contract. *See, e.g.*, *Fairmont Travel v. George S. May Int'l Co.*, 75 F. Supp. 2d 666, 669 (S.D. Tex. 1999) ("Defendants overlook the possibility that Defendants did owe an independent duty to Plaintiff. Defendants had a duty not to make misrepresentations or to make certain disclosures during the contract formation stage, and this duty is imposed by law independent of a contract and thus, is actionable under the DTPA."); *In re Toyota RAV4 Hybrid Fuel Tank Litig.*, 534 F. Supp. 3d 1067, 1116 (N.D. Cal. 2021) (holding DTPA claims not barred by parties' contract because duties arose independently); *Hersh v. CitiMortgage, Inc.*, No. 2:13-cv-1344, 2013 U.S. Dist. LEXIS 180926, at *25 n.7 (W.D. Pa. Dec. 30, 2013) (similar); *United States ex rel. CMC Steel Fabricators v. Harrop Constr. Co.*, 131 F. Supp. 2d 882, 890 (S.D. Tex.

2000) ("The duty not to make misrepresentations or to make certain disclosures during the contract formation stage is imposed by law independent of a contract, and thus, is actionable under the DTPA."); *Smith v. Seeco, Inc.*, No. 4:14-CV-00435 BSM, 2017 U.S. Dist. LEXIS 221667, at *41-42 (E.D. Ark. Mar. 21, 2017) ("if the facts warrant, a party to a contract may sue on an independent tort claim" (citation omitted)).

Simply put, not every claim *relating* to a product (such as the BMW car in *Ngo*) or service is intertwined with that product's or service's purchase or lease agreement. Here, claims for *deceptive consumer practices* against *Venture Solar* simply are not so intertwined with purchase and lease agreements with third parties, and thus Venture Solar fails to establish this element.

### 2. The Relationship Among Stewart, Ahmed, SunPower, Sunnova, and Venture Solar Does Not Suggest Stewart and Ahmed Consented to Arbitrate with Venture Solar Claims Related to Venture Solar's Marketing

The cases finding the parties' relationships so intertwined are generally those where "the non-signatory party asserting estoppel has had some sort of *corporate* relationship to a signatory party," or where "a non-signatory defendant owns or controls a signatory defendant," *Trump*, 6 F.4th at 413 (emphasis in original), such as a parent-subsidiary relationship or otherwise in the same corporate family. Here, the contracts themselves make clear that their plain terms do *not* apply to Venture Solar. The Stewart-Sunnova agreement reads, in relevant part, "*You* and *we* agree that any dispute, claim or disagreement between *you* and *us*." (Yackery Decl. Ex. B § 19 (emphases added), ECF No. 31-4). "You . . . mean[s] any person signing this PPA as a Homeowner or Co-Homeowner." (*Id.*). And ""we," "us" and "our" mean Sunnova and any assignee of this PPA." (*Id.*). Venture Solar is neither Sunnova nor an assignee of the Stewart-Sunnova agreement, and thus the arbitration agreement cannot apply to it. Similarly, the Ahmed-SunPower agreement limits "agree[ment]" to arbitrate to "You and We." (Yackery

Decl. Ex. C § 17, ECF No. 31-5).  In turn, "you" is undefined and is reasonably meant to identify the consumer/purchaser.  (*Id.* § 1).  And "We" means "SunPower Capital, LLC (together with its successors and assigns").  (*Id.*).

The cases Venture Solar cites in support of its proposition that "Courts in this District routinely compel arbitration of disputes like this one in the context of similar arbitration agreements," (Venture Solar Mov. Br. 13, 16), should be dismissed out of hand.  First, *JLM Indus. v. Stolt-Nielsen SA*, involved a materially different relationship among the parties because the non-signatory there was the parent company of a subsidiary that signed the arbitration agreement with plaintiff, and plaintiff treated both parent and subsidiary the same in its pleading.  387 F.3d 163, 177-78 (2d Cir. 2004).  Even less applicable, the parties in *Edible Int'l., LLC v. Google, LLC* had direct contractual privity and the plaintiff sued regarding advertising services defendant provided under that contract (a clear-cut case *not* involving *any* non-signatories).  No. 3:18-cv-00216 (MPS), 2018 U.S. Dist. LEXIS 116651, at *1-2, 11-12 (D. Conn. July 13, 2018).  As was also the case in *Ferrie v. DirecTV, LLC*, where the only issues were whether plaintiff actually assented to the arbitration provision and whether said provision was unconscionable; there were no issues regarding equitable estoppel and non-signatories.  No. 3:15-CV-409 (JCH), 2016 U.S. Dist. LEXIS 5081, at *9, 40-41 (D. Conn. Jan. 12, 2016).

Venture Solar's reliance on *Ragone v. Atl. Video*, 595 F.3d 115 (2d Cir. 2010) is also misplaced.  The plaintiff there asserted employment discrimination claims against ESPN, who she thought "to be, to a considerable extent, her employer."  *Id.* at 117, 119, 127.  The court found this to be noteworthy, and effectively outcome-determinative in determining an intertwined relationship.  *Id.* at 128.  But the difference between the plaintiff there and Stewart and Ahmed here is that Plaintiffs did not consider Sunnova and SunPower to be the marketers of their solar systems and are not suing Venture Solar based on perceived misconduct by Sunnova

and SunPower.  Venture Solar acknowledges it was an installer for Sunnova and SunPower but that does nothing to diminish the fact that Plaintiffs' claims do not arise from their agreements, but rather independently from them and only against Venture Solar, a non-party to those agreements.

Lastly, Venture Solar's reliance on *Conn. Gen. Life*, (though it cited it in support of the intertwined-claims factor) is also misplaced because the court there found the non-signatory's relationship was akin to a "parent/subsidiary relationship" since the non-signatories "own[ed] and operate[d]" and "administ[ered]" for the signatory entities.  2013 U.S. Dist. LEXIS 123128 at *31.  And it further noted that these related non-signatory and signatory entities were alleged to have engaged in the misconduct *together*, making their relationship more relevant for the purposes of the claims asserted.  *Id.*  Here, not only has there been no allegation of a parent/subsidiary relationship between or among Venture Solar and Sunnova and SunPower, but Venture Solar has not insisted there is one either.  Further, there are no allegations of wrongdoing on either Sunnova or SunPower's part; in fact, they are not mentioned in the Complaint at all.

As the Ninth Circuit held in *Ngo*, even where that arbitration provision required arbitration of claims "concerning third parties," "it still g[ave] only [the parties to the contract (and an assignee, given explicit contract language)] the power to compel arbitration."  2022 U.S. App. LEXIS 889 at *12; *see also B.F. v. Amazon.com Inc.*, No. C19-910 RAJ-MLP, 2020 U.S. Dist. LEXIS 63224, at *6-7 (W.D. Wash. Apr. 9, 2020) ("[I]f Amazon wanted to include a provision in the agreement requiring the parents to consent to arbitration on behalf of their minor children, it could have done so. It did not. In this case, the Court agrees with the Report that compelling Plaintiffs to arbitration under equitable estoppel would lead to absurd results, where any nonregistered user who uses the devices in question could be bound by the arbitration

agreement."); *Westburg v. Good Life Advisors, LLC*, No. 18cv248-LAB (MDD), 2018 U.S. Dist. LEXIS 180134, at *13 (S.D. Cal. Oct. 18, 2018) ("If Good Life had intended claims like these to be arbitrable, it could have easily added an arbitration clause to the Operating Agreement that it required Plaintiffs to sign. Good Life didn't, and its attempt to shoehorn these claims into an arbitration clause between Plaintiffs and a non-party doesn't fly.").

### 3. The Ahmed-SunPower Agreement Expressly Strips an Arbitrator of the Power to Award Any Relief For or Against Venture Solar, Evincing Additional Indication That The Parties Did Not Intend to Arbitrate Claims in this Case

As it relates to Plaintiff Ahmed's agreement with SunPower, an arbitrator is prohibited from even providing Venture Solar any relief: "The arbitrator will not award relief for or against anyone who is not a party." (Yackery Decl. Ex. C § 17). Therefore, Plaintiff Ahmed's claim most definitely cannot proceed in arbitration against Venture Solar. *Local 1199, Drug, Hosp. & Health Care Emples. Union v. Brooks Drug Co.*, 956 F.2d 22, 25 (2d Cir. 1992) (holding that the scope of an arbitrator's authority is defined and limited by the arbitration agreement's terms).

### CONCLUSION

Defendants cannot demonstrate they are entitled to enforce the arbitration clauses in non-parties' contracts with Plaintiffs Stewart and Ahmed. The motion to compel arbitration must be denied as to those Plaintiffs. The Court should stay the claims of Plaintiff James, which will proceed in arbitration.

Dated: February 2, 2022
/s/ Seth Lesser
Seth Lesser (Bar No.: CT 27068)
Jeffrey Klafter (*pro hac vice*)
Amir Alimehri (*pro hac vice*)
**KLAFTER LESSER LLP**
2 International Drive, Suite 350
Rye Brook, New York 10601

T. (914) 934-9200
E. seth@klafterlesser.com
   jak@klafterlesser.com
   amir.alimehri@klafterlesser.com

Cary L. Flitter (*pro hac vice*)
Andrew M. Milz (*pro hac vice*)
**FLITTER MILZ, P.C.**
450 N. Narberth Ave., Suite 101
Narberth, PA 19072
T. (610) 822-0782
E. cflitter@consumerslaw.com
   amilz@consumerslaw.com

*Counsel for Plaintiffs and Proposed Class*

**CERTIFICATE OF SERVICE**

I hereby certify that on February 2, 2022, I electronically filed the foregoing with the

Clerk of the Court using the CM/ECF system, which will send notification of such filing to all

counsel of record electronically by e-mail.