UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT

| | |
|---|---|
| KURT JAMES, JULIE STEWART, and ZAKER AHMED, on behalf of themselves and all others similarly situated,<br><br>　　　　Plaintiffs,<br>　v.<br><br>VENTURE HOME SOLAR, LLC, and VENTURE SOLAR COMMERCIAL, LLC,<br><br>　　　　Defendants. | Civil Action No.<br>3:21 - CV - 1306 (CSH)<br><br><br><br>JUNE 8, 2022 |

**RULING ON DEFENDANTS' MOTION TO COMPEL ARBITRATION, DISMISS, AND/OR STAY PROCEEDINGS [Doc. 31]**

**HAIGHT, Senior District Judge:**

This action is before the Court on the motion of Defendants, contested in part, to compel Plaintiffs to submit their claims to arbitration. Doc. 31.

## I. INTRODUCTION

This is a purported class action arising out of the quest for solar energy, a pursuit (together with wind energy) generated by the global perception of fossil fuels as a cause of climate change.

The individual Plaintiffs own residential homes. The affiliated Defendants market and install electricity-producing solar panel systems on residential properties, and did so at Plaintiffs' homes.

Plaintiffs allege that Defendants' solar panel systems did not and could not produce the substantial savings in Plaintiffs' electricity usage bills that Defendants had promised would be achieved. Plaintiffs claim "compensatory, restitutionary, punitive, and treble damages," Doc. 1 ("Complaint"), at 16. The individual Plaintiffs, residential home owners, sue on their own behalf,

1

and also purport to sue on behalf of a Class of "all residential persons or commercial entities residing or located in Connecticut, New York, New Jersey, Rhode Island, Massachusetts, and New Hampshire, who leased or purchased a solar panel system marketed by Defendants and who did not receive the offset on their electricity usage charges promised by Defendants." *Id.* at ¶ 1.

Defendants now move to compel Plaintiffs to submit their claims against Defendants to arbitration, pursuant to one or another of the contracts between or involving the parties. Doc. 31. One of the Plaintiffs, Kurt James, concedes his obligation to submit his claims to arbitration. The other two Plaintiffs, Julie Stewart and Zaker Ahmed, resist Defendants' motion to compel them to do so. This Ruling resolves the contested aspects of Defendants' motion.

## II.  BACKGROUND

Plaintiffs Kurt James and Julie Stewart are both citizens of Connecticut who reside in New Haven county. Doc. 1, ¶¶ 6-7.  Plaintiff Zaker Ahmed is a citizen of New York, who resides in Queens county. *Id.* ¶ 8.

The first-named Defendant, Venture Home Solar, LLC, is alleged to be a Delaware LLC. *Id.* ¶ 9.  It is further alleged that this entity's "principal place of business" is in Brooklyn, New York, a factor not determinative of an LLC's citizenship, which is derived from the citizenship of each equity-owning individual, not stated in the pleading.[1]

The Complaint alleges:  "Venture Solar is the entity that marketed solar panel systems to Plaintiffs and the residential members of the Class." *Id.* In "Plaintiffs' Memorandum" in opposition

---

[1] *See, e.g., Am. Com. Ins. Co. v. Bronko Constr. LLC*, No. 3:21-CV-1640 (CSH), 2022 WL 313885, at *2 (D. Conn. Feb. 2, 2022) ("[A] limited liability company ... takes the citizenship of *each of its members*." (quoting *Bayerische Landesbank, New York Branch v. Aladdin Cap. Mgmt. LLC*, 692 F.3d 42, 49 (2d Cir. 2012) (emphasis added)).

2

to the motion to compel, Plaintiffs state: "The Venture Solar defendants are rooftop solar sales companies who solicited Plaintiffs and the putative class with the promise of significant utility 'offsets' on their electric bills." Doc. 38, at 6.

While the text of the Complaint refers to the first-named Defendant as "Venture Solar," the record shows that this company's name is correctly stated in the case caption as "Venture **Home** Solar, LLC" and it is referred to by its members as "Venture Home." *See* Doc. 31-2 ("Declaration of Alex Yackery"). I will refer to this Defendant in this Ruling as "Venture Home."

The Complaint also charged as Defendants Venture Commercial NYC, LLC and Venture Solar Commercial, LLC. Subsequently, Plaintiffs filed a notice of voluntary dismissal [Doc. 12] which dismissed Venture Commercial NYC, LLC from the action. The name of that entity has been removed from the caption of the case.

Defendant Venture Solar Commercial, LLC is alleged to be a Delaware LLC, with its principal place of business in Brooklyn, New York. Doc. 1, ¶ 11. This company is further alleged to be "an entity that marketed solar panel systems to *commercial* entities included in the Class." *Id*. (emphasis added). As such, this corporate Defendant is not involved in any way with the three individual Plaintiffs, who are residential owners.

In consequence, this Ruling turns upon the relationships between the three individual Plaintiffs and Defendant Venture Home.[2]

---

[2] This Court's subject matter jurisdiction over this purported class action is alleged to be derived from diversity of citizenship, as provided by 28 U.S.C. § 1332 (d)(2)(A). That subsection states: "The district courts shall have original jurisdiction of any civil action in which the matter in controversy exceeds the sum or value of $5,000,000, exclusive of interest and costs, and is a class action in which– (A) any member of a class of plaintiffs is a citizen of a State different from any defendant." This Ruling assumes that jurisdiction exists, without deciding the point.

The theory of Plaintiffs' case, spelled out in the First Claim of the Complaint, alleging violation of the Connecticut Unfair Trade Practices Act ("CUTPA"), Conn. Gen. Stat. § 42-110a, *et seq.*, is that Venture Home "falsely promised" Plaintiffs that "by installing and using a solar panel system marketed by Defendants their electricity usage bills would be fully or substantially offset and they would pay little or no money for electricity usage to their incumbent electricity provider." Doc. 1, ¶ 53. Plaintiffs "were induced to install and use Defendants' solar panel systems because of the promise that their electricity usage bills would be fully or substantially offset and they would pay little or no money for electricity usage." *Id*. ¶ 59. Plaintiffs "have not received the offset in electricity usage costs as promised by Defendants," and have "suffered substantial damages" in consequence. *Id.* ¶¶ 60, 61.

In addition to the First Claim under CUTPA, the Complaint also asserts claims for negligent misrepresentation (Second Claim) and for unjust enrichment (Third Claim).

### III.   DISCUSSION

Further pertinent facts are found in a sworn declaration by Alex Yackery, a member of the Venture LLCs [Doc. 31-2].

**A.   The Contracts Involved**

According to Yackery, "Venture Home installs solar panel systems onto residential properties." Doc. 31-2 (Yackery Decl.), ¶ 3. "The power generated from the solar panel systems is then used to power the residence, thereby providing a clean energy source, and offsetting the property owner's energy bill from traditional energy services." *Id.* At times, Venture Home "directly contracts with a residential client." *Id*., ¶ 4. On those occasions, "the client enters into a Solar Electric Installation Contract with Venture." *Id*.

At other times, "Venture Home also contracts with third-party solar companies to install solar panels onto the residences of the customers of these third-party companies.." *Id.* ¶ 6. Yackery's declaration goes on to explain:

> In those cases, the third-party company enters into a contract with a residential customer for the installation of solar panels. Venture Home contracts with the third-party company to provide design and installation services for these customers. Typically, the third-party company's contract with the customer specifies that Venture Home will design and install the system, though there is no direct contractual relationship between Venture Home and the customer.

*Id.*

In the case at bar, Plaintiff Kurt James entered into the former type of arrangement on January 29, 2020. Doc. 1, ¶ 30. He thus contracted directly with Venture Homes for the installation of a solar panel system at his residence. Doc. 31-2, ¶ 3.

Plaintiffs Julie Stewart and Zaker Ahmed followed the second path, entering contracts with "third-party solar companies" with which Venture had contracted to install solar panels. *Id.* ¶¶ 6-7, 10. On January 21, 2020, Stewart entered into a contract with a company called Sunnova Energy Corporation ("Sunnova") for the installation of solar panels on her residence. *Id.* ¶ 7. Stewart's contract with Sunnova listed Venture Home as the "Subcontractor/Installer" and recited that "Venture Home Solar, LLC and Sunnova will install a 6.650-kW solar system on your home." *Id.* ¶ 8; Doc. 31-4, at 2. The contract further specified that "Venture Home Solar, LLC will complete the design and engineering drawings for your system, and Sunnova will review the final design to ensure it meets our high quality standards." Doc. 31-2, ¶ 8; Doc. 31-4, at 2.

Plaintiff Zaker Ahmed entered into a contract with Sun Power Capital LLC on or about November 10, 2017, for the installation of solar panels on his residence. Doc. 31-2, ¶ 10. That

5

contract listed Venture as the "Dealer/Installer" of the solar panel system. *Id.* ¶ 11.

Under these circumstances, Yackery declares that Venture had and "has no direct contractual relationship" with Plaintiff Julie Stewart or with Plaintiff Zaker Ahmed. *Id.* ¶ 14.

**B.     The Arbitration Clauses**

Each of the three existing contracts contains a broadly stated arbitration clause. The contract between Plaintiff Kurt James and Defendant Venture Home provides: "If there is a dispute, then both you [James] and we [Venture] must seek resolution of the dispute in either arbitration or small claims court. If your dispute cannot be resolved in small claims court for any reason, then you must seek resolution of your dispute in arbitration." Doc. 31-3, at 10 ("Dispute Resolution"). The contract between Plaintiff Julie Stewart and non-party Sunnova provides: "You [Stewart] and we [Sunnova] agree that any dispute, claim or disagreement between you and us (a "Dispute") shall be resolved exclusively by arbitration except as specifically provided below." Doc. 31-4, at 14 (¶ 19) ("Arbitration"). The contract between Plaintiff Zaker Ahmed and non-party Sun Power Capital LLC ("Sun Power") provides: "You [Ahmed] and We [Sun Power] agree that any dispute, claim or disagreement between the parties (a "Dispute") shall be resolved exclusively by arbitration." Doc. 31-5, at 13 (¶ 17) ("Applicable Law; Arbitration").

The arbitration clauses in the contracts are reproduced in full in the parties' submissions on the present motion. Doc. 31-3, 31-4, and 31-5. The language, presumably drafted by lawyers, is lengthy and prolix. For the purpose of this Ruling's analysis, the quotations in the preceding paragraph are sufficient.

**C.     The Question Presented on this Motion**

The basic question presented by the Venture Defendants' motion is whether the individual

6

Plaintiffs should be compelled to arbitrate their claims against Venture that arise out of these three contracts.

Certain Plaintiffs oppose that proposition, but only with respect to two of the three contracts involved. The brief of counsel for Plaintiffs [Doc. 38] says: "Unlike Plaintiffs Stewart and Ahmed, who never agreed to arbitrate with Defendants, Plaintiff James directly entered into an agreement with Venture Solar which contains an arbitration clause."[3] Doc. 38, at 11 (citing Doc. 31-3). Counsel continue: "Plaintiffs concede that the claims asserted by James are subject to arbitration and they will be filed in a private arbitration forum. Plaintiffs ask this Court to stay this matter as to James only." *Id*.

The dispute presented by this motion is whether the other two Plaintiffs – Stewart and Ahmed – should be compelled to arbitrate their claims against Venture. The case for these Plaintiffs is that since they contracted with non-parties (Sunnova and Sun Power, respectively), the arbitration clauses contained in those contracts have nothing to do with Stewart's and Ahmed's claims in this litigation against Venture, and Venture cannot compel them to arbitrate those claims.

The case for Venture is that while arbitration "is a creature of contract" and "a party therefore cannot be required to submit to arbitration any dispute which it has not agreed to submit," nevertheless the Second Circuit has "recognized a number of common law principles of contract law that may allow non-signatories to enforce an arbitration agreement, including equitable estoppel." *Doe v. Trump Corp.*, 6 F.4th 400, 412 (2d Cir. 2021)(citations omitted).

Venture relies on the principle of equitable estoppel, which if applicable to the case at bar

---

[3] For the reasons stated *supra*, counsel's reference to "Venture Solar" should be read as a reference to "Venture Home."

would estop Plaintiffs Stewart and Ahmed, signatories to contracts for the installation of solar panels, from avoiding arbitration with a non-signatory to those contracts (Venture) "when the issues the nonsignatory is seeking to resolve in arbitration are intertwined with the agreement that the estopped party has signed." *Choctaw Generation Ltd. P'ship v. Am. Home Assur. Co.*, 271 F.3d 403, 404 (2d Cir. 2001) (citation and internal quotation marks omitted).

Venture accurately states in its reply brief [Doc. 39] that "[t]he parties' only dispute" on this motion "is whether, under the equitable estoppel doctrine, Venture may enforce the arbitration provision" in the contracts with Sunnova and Sun Power "as against Stewart and Ahmed." Doc. 39, at 5. I turn to an analysis of that issue.

**D.  Equitable Estoppel and Second Circuit Precedent**

In *Doe v. Trump Corporation*, decided ten months ago, the Second Circuit undertook a comprehensive review of "the equitable estoppel inquiry as governed by Second Circuit precedent," 6 F.4th at 412, in cases deciding whether to compel arbitration. Judge Sack's opinion explains the decision in *Doe*, and also instructs district courts on how to resolve other comparable cases. As a recipient – one might say a target – of that instruction, I will pay close attention to the Second Circuit's reasoning in *Doe*.

The individual plaintiffs in *Doe* invested in a non-party entity called ACN Opportunity, LLC ("ACN"), a marketing company which offered various business opportunities to investors. 6 F.4th at 403. The defendants in *Doe* were the Trump Corporation and individuals: Donald J. Trump and his three adult children, Donald J. Trump, Jr., Eric Trump, and Ivanka Trump (collectively "the Trump defendants").

According to the plaintiffs' complaint, their recruitment by ACN into business relationships

did not work to their advantage. Plaintiffs alleged that "none of them succeeded in making a profit from the relationship or even earning back the money that they had invested in ACN." *Id.* at 405.

The disappointed investors' action against the Trump defendants alleged that "in exchange for millions of dollars in secret payments" from ACN to the Trump defendants, the Trump defendants "fraudulently promoted and endorsed ACN as offering legitimate business opportunities" to those who entered into contracts with ACN. *Id.* at 404. The Trump defendants' "message was critical, the plaintiffs assert, in convincing consumers – including them – to invest in ACN." *Id*. The Trump defendants, plaintiffs alleged, had conducted no due diligence into ACN's operations; they "were instead endorsing ACN's business opportunity because they were being paid millions of dollars to do so – a fact that they deliberately failed to disclose." *Id.* at 405. Plaintiffs' action against the Trump defendants was based upon those defendants' "allegedly fraudulent, misleading, and deceptive statements." *Id.* at 403.

The *Doe* plaintiffs' contracts with non-party ACN contained arbitration clauses. "Although not parties to the arbitration agreements between the plaintiffs and ACN, the [Trump] defendants sought nevertheless to enforce these agreements against the plaintiffs under principles of equitable estoppel." *Id*. The district court denied the Trump defendants' motion to compel arbitration, 453 F. Supp. 3d 634, 644 (S.D.N.Y. 2020); and the Second Circuit affirmed, 6 F.4th 400.

The Second Circuit's opinion in *Doe* distills, from decisions in that circuit and other jurisdictions, rules governing when the equitable estoppel principle applies in such cases and when it does not. *Doe* begins by recalling that in *Choctaw,* 271 F.3d 403, "we observed (with approval) that other circuits had recognized an estoppel theory requiring arbitration between a signatory and a non-signatory where

9

> the relationships of persons, wrongs and issues, in particular whether the claims that the nonsignatory sought to arbitrate were intimately founded in and intertwined with the underlying contract obligations. . . . In this way, the circuits have been willing to estop a signatory from avoiding arbitration with a nonsignatory when the issues the nonsignatory is seeking to resolve in arbitration are intertwined with the agreement that the estopped party has signed."

6 F.4th at 412 (quoting *Choctaw*, 271 F.3d at 406). *Doe* goes on to hold that "'intertwined' factual issues" standing alone do not trigger equitable estoppel; there must also

> be a relationship among the parties of a nature that justifies a conclusion that the party which agreed to arbitrate with another entity should be estopped from denying an obligation to arbitrate a similar dispute with the adversary which is not a party to the arbitration agreement.

6 F.4th at 413 (citation and internal quotation marks omitted).

*Doe* explains the effect of these elements:

> In other words, the relationship between the parties must either support the conclusion that the signatory effectively consented to extend its agreement to arbitrate to the nonsignatory, or, otherwise put, made it inequitable for the signatory to refuse to arbitrate on the ground that it had made no agreement with the non-signatory.

*Id.* (citation, internal quotation marks, and brackets omitted).

Courts have applied equitable estoppel against a party seeking to avoid arbitration when the non-signatory party asserting estoppel has a corporate relationship to a signatory party, as a subsidiary, affiliate or agent. That is not the case at bar; but the Second Circuit also points out in *Doe* that:

> In addition, we have extended estoppel beyond situations involving affiliated corporate entities in a limited number of circumstances where a defendant, while a non-signatory to the contract containing an arbitration clause, was nevertheless explicitly named therein as having certain tasks to perform under that contract, or the signatory

>> seeking to avoid arbitration treated the other signatory and nonsignatory as interchangeable with respect to its rights and responsibilities under the relevant contract.

*Id.* (citations, internal quotation marks, and ellipsis omitted).

*Doe* sums up the rule the Second Circuit distills from an exhaustive review:

> In order to establish equitable estoppel in the present context so as to bind a signatory of a contract (here, the plaintiffs) to arbitrate with one or more non-signatories (here, the defendants), there must be a close relationship among the signatories and non-signatories such that it can reasonably be inferred that the signatories had knowledge of, and consented to, the extension of their agreement to arbitrate to the non-signatories.

*Id.* at 414.

If in a given case these elements are not present, and the non-signatory is alleged to be nothing more than someone whose conduct relating to the underlying transaction was wrongful, an arbitration clause between signatories does not apply to the non-signatory, who can neither compel nor be required to participate in arbitration with a signatory. That is the holding in *Doe*, where the Second Circuit said: "Where, however, the nonsignatory is alleged to be a third-party wrongdoer as it is here, we have made clear that the arbitration contract in no way extends to the non-signatory." *Id.* at 413-14 ( citations and internal quotation marks omitted).

The Second Circuit's reasoning in *Doe* explains why the court denied the Trump defendants' motion to compel arbitration of the ACN investor-plaintiffs' claims against them. The Trump defendants sought to enforce, on their behalf, an arbitration clause contained in contracts ("the IBO agreements") between ACN and the plaintiffs. Rejecting that effort, the Second Circuit said:

> There was no corporate relationship between the defendants and ACN of which the plaintiffs had knowledge, the defendants do not own or control ACN, and the defendants are not named in the IBO

11

>agreements between ACN and the plaintiffs.
>
>. . . [T]he plaintiffs were unaware of any corporate relationship between signatory ACN and the non-signatory defendants, and did not treat ACN and the defendants as at least somewhat interchangeable with respect to the plaintiffs' rights and responsibilities under the relevant contract. To the contrary, as the district court observed, the plaintiffs' claims turn on the premise that the "[d]efendants wrongfully held themselves out as offering an independent endorsement of ACN" when they were, in fact, being paid handsomely to promote and endorse ACN. Indeed, central to the plaintiffs' theory of fraud is that the defendants misled the plaintiffs to believe that the defendants and ACN were independent of one another and that the defendants were endorsing and promoting ACN based on an objective outside assessment of the value of ACN's business opportunity. Consistent with this understanding, there is no evidence to suggest that the plaintiffs treated the defendants as if they were effectively parties to the IBO agreement.

*Id.* at 414 (citations, some internal quotation marks, and some brackets omitted).

There are readily discernible differences in these regards between *Doe* and the case at bar. In *Doe,* the non-signatories who sought to compel arbitration were not named in the underlying contract, and played no part in contractual performance. In the instant case, the contracts between residence owners and providers specifically named non-signatory Venture Home as the designer and installer of the solar panel systems which formed the subject matter of the contracts. Doc. 31-4, at 3; Doc. 31-5, at 2.

The cases are fact-intensive. In *Ragone v. Atlantic Video at Manhattan Center*, 595 F.3d 115 (2d Cir. 2010), the plaintiff, a make-up artist, was required to arbitrate her employment discrimination and sexual harassment claims against both AVI, the signatory to her employment and arbitration agreement, and against a non-signatory, ESPN. Plaintiff understood that she was hired by AVI specifically to work for ESPN. Plaintiff was required to follow the instructions of ESPN

supervisors, she was supervised by ESPN personnel in the course of her duties, and she alleged that she had been harassed by ESPN employees. Reciting the facts, the Second Circuit observed that there is "no question that the subject matter of the dispute between Ragone and AVI is factually intertwined with the dispute between Ragone and ESPN. It is, in fact, the same dispute: whether or not Ragone was subjected to acts of sexual harassment which were condoned by supervisory personnel at AVI and ESPN." 595 F.3d at 128.

The Second Circuit's decision stresses the "relationship between Ragone and ESPN that justifies sending this entire dispute to arbitration." *Id.* Plaintiff's knowledge "that she would extensively treat with ESPN personnel is sufficient to demonstrate the existence of a relationship between Ragone and ESPN that allows the latter to avail itself of the arbitration agreement between Ragone and AVI." *Id.* In those circumstances, the Second Circuit held that "the relationship between Ragone, AVI, and ESPN supports the application of equitable estoppel," so that " Ragone is properly estopped from avoiding arbitration with ESPN." *Id.* at 127, 128.

The Second Circuit reached the opposite conclusion in *Ross v. American Express Company*, 547 F.3d 137 (2d Cir. 2008), which rejected a motion to compel arbitration. The court of appeals' decision in *Ross* turns on the nature of the relationship between the signatory and non-signatory to contracts containing a compulsory arbitration clause.

The plaintiffs in *Ross* were holders of credit cards issued by certain banks. Plaintiffs entered into cardholder agreements with the issuing banks. The agreements contained a compulsory arbitration clause. Defendant American Express Company ("Amex") had not issued the credit cards to plaintiffs or signed the cardholder agreements. Plaintiffs' suit against Amex alleged that Amex conspired with others to violate the antitrust laws by persuading the issuing banks to include

13

compulsory arbitration clauses in the cardholder agreements. Amex moved to compel plaintiffs' claims against it to be submitted to arbitration. Amex's theory was that "its status as an alleged co-conspirator with the entities which *are* indisputably parties to the cardholder agreements allows it to avail itself of the compulsory arbitration clauses in those agreements." 547 F.3d at 140.

The Second Circuit rejected that theory in language that resonates in the case at bar, and is worth quoting at some length:

> It is indisputable that the subject matter of the dispute between the parties – the alleged conspiracy between Amex and the Issuing Banks to violate the antitrust laws – is related to the subject matter of the cardholder agreements the plaintiffs signed with the Issuing Banks. . . . But *the further necessary circumstance* of *some relation* between Amex and the plaintiffs sufficient to demonstrate that the plaintiffs intended to arbitrate this dispute with Amex is utterly lacking here. Amex has no corporate affiliation with the Issuing Banks; the plaintiffs allege without contradiction that Amex is in fact a *competitor* of the Issuing Banks in the credit card market. Amex did not sign the cardholder agreements, *it is not mentioned therein,* and it had no role *in their formation or performance*. The plaintiffs did not in any way treat Amex as a party to the cardholder agreements. On the contrary, they do not allege to have treated Amex at all. . . . Amex's only relation with respect to the cardholder agreements was as a *third party* allegedly attempting to subvert the integrity of the cardholder agreements. In sum, arbitration is a matter of contract and, contractually speaking, *the plaintiffs do not know Amex from Adam*. Amex therefore cannot avail itself of the arbitration agreements contained in the cardholder agreements.

*Id.* at 146 (emphases added).

I have emphasized certain passages in this quotation in order to demonstrate the manners in which the situation of Venture Home in the case at bar differ from those of Amex in *Ross*. The signatories in *Ross* did not know "Amex from Adam." In the present case, Venture Home *is* Adam, if one accepts the Old Testament's designation of the author of all our sins. Venture Home is

specifically identified by the contracts in suit as the originator and installer of the allegedly underperforming solar panel system. Venture Home thus bears no resemblance to Amex in *Rose*, which was not mentioned in the underlying contract and played no part in that contract's formation or performance.

Anticipating the analysis in *Doe*, the Second Circuit said in *Sokol Holdings, Inc. v. BMB Munai, Inc.,* 542 F.3d 354, 359 (2d Cir. 2008), that for equitable estoppel to be the basis for compelling arbitration, "in addition to the 'intertwined' factual issues, there must be a relationship among the parties of a nature that justifies a conclusion that the party which agreed to arbitrate with another entity should be estopped from denying an obligation to arbitrate a similar dispute with the adversary which is not a party to the arbitration agreement." The Second Circuit held in *Sokol* that a relationship of that nature was not present, and an obligation to arbitrate did not arise, when a non-signatory third party's relationship with one of the signatories to an arbitration agreement existed only by means of its alleged tortious interference with the other party's contract rights. The third party "could not rely on this recently acquired relationship to enforce [an] arbitration agreement against [the] party with whose rights it had allegedly interfered." 542 F.3d at 354 (synopsis of "Holdings"). The Second Circuit reasoned that given those facts, "there would be no unfairness in allowing . . . the victim of the tortious interference, to insist that, while he agreed to arbitrate with his contractual counterparty . . . , he in no way consented to extend that agreement to an entity which tortiously subverted his rights under the agreement." *Id.* at 362.

In *Choctaw*, 271 F.3d 403, cited and quoted by the Second Circuit in *Doe*, plaintiff Choctaw and non-party Bechtel Power Co. entered into a construction contract pursuant to which Bechtel was building a facility for Choctaw. That contract contained an arbitration clause. Defendant American

15

Home issued a surety bond to secure Bechtel's performance under the construction contract. American Home did not sign the construction contract. The surety bond American Home issued did not contain an arbitration clause. Disputes broke out between Choctaw and Bechtel under the construction contract, which were submitted to arbitration pursuant to the arbitration clause in that contract. Choctaw also made demands against American Home under the surety bond, which American Home resisted. The question presented to the Second Circuit was whether American Home could compel Choctaw to arbitrate its claims under the surety bond.

The Second Circuit answered that question in the affirmative. Judge Jacobs' opinion concluded that "arbitration is mandated under . . . the alternative theory of arbitrability pressed by American Home," 271 F.3d at 406, a theory based on the construction contract that the opinion summarizes thus:

> Choctaw as signatory is estopped from avoiding arbitration of a dispute with a non-signatory (such as American Home) where the non-signatory has a close relationship with the parties bound to arbitrate, where the dispute concerns that relationship, and where the dispute is closely linked to a dispute that is subject to arbitration in the underlying contract.

*Id*. at 405. The Second Circuit found that those elements existed, and held:

> We conclude that this controversy is arbitrable because Choctaw agreed that controversies that are unable to be resolved pursuant to the construction contract "shall be settled by arbitration," and because (under our case law) Choctaw, as signatory, is estopped from avoiding arbitration with a non-signatory when the issues the nonsignatory is seeking to resolve in arbitration are intertwined with the agreement that the estopped party has signed.

*Id.* at 404 (citations and internal quotation marks omitted). On that latter point, Judge Jacobs' opinion notes succinctly: "The controversy between Choctaw and American Home under the Bond

16

could hardly be more closely bound to the dispute now in arbitration between Choctaw and Bechtel under the Construction Contract." *Id.* at 406.

**E.    Resolution of This Case**

The Second Circuit's decision in *Doe*, and the other cases cited *supra*, lead to the conclusion that the claims of Plaintiffs Julie Stewart and Zaker Ahmed against Defendant Venture Home Solar, LLC must be submitted to arbitration.

That is so, even though Venture Home, which moves to compel arbitration, is not a party to the underlying solar panel system contracts containing arbitration clauses, which Plaintiffs entered into with other entities. In the circumstances presented by this case, Plaintiffs are equitably estopped from avoiding arbitration of their claims against Venture Home.

The Second Circuit precedents identify two elements which mandate arbitration of claims by or against non-signatories of arbitration agreements. These are the intertwining of contractual obligations; and a relationship between signatory and non-signatory parties whose nature justifies the invocation of equitable estoppel as a bar to avoiding arbitration of disputes between them.

Both elements are present in the case at bar. First, the solar panel system contracts between these Plaintiffs and the non-party entities (Sunnova or Sun Power) specifically identified non-signatory Venture Home as the designer and installer of the systems. Venture Home's performance of its contracts with Sunnova and Sun Power also constituted performance of those entities' contracts with the Plaintiffs. Whether Venture Home's performance in creating the solar panel systems violated promises made to Plaintiffs by failing to reduce the Plaintiff homeowners' electric bills does not just present intertwined disputes between the parties to the contracts; to quote *Ragone*, "it is, in fact, the same dispute," 595 F.3d at 128. To paraphrase *Chocktaw*, the contracts, parties and

disputes in this case "could hardly be more closely bound," 271 F.3d at 406.

Second, the specific identification of Venture Home in Plaintiffs' contracts with Sunnova or Sun Power as the "subcontractor," "dealer" or "installer" of the solar panel systems, leads readily to the inference (which I draw) that in signing those contracts, the Plaintiffs "had knowledge of, and consented to, the extension of their agreement to arbitrate to the non-signatories." *Doe*, 6 F.4th at 414.

The case at bar mirrors the elements which the cited Second Circuit cases hold mandate the application of the equitable estoppel principle. The Second Circuit decisions rejecting equitable estoppel do so because of entirely different circumstances, not present in this case. I conclude that these Plaintiffs are equitably estopped from avoiding Venture Home's demand for arbitration of Plaintiffs' claims against it.[4]

## IV. CONCLUSION

For the foregoing reasons, the Court makes this Order:

1. Defendants' Motion to Compel Arbitration [Doc. 31] is GRANTED as to Plaintiff Julie Stewart. Those parties are directed to proceed to arbitration in the manner provided in the arbitration agreement between Plaintiff Stewart and non-party Sunnova Energy Corporation.

2. Defendants' Motion to Compel Arbitration [Doc. 31] is GRANTED as to Plaintiff Zaker Ahmed. Those parties are directed to proceed to arbitration in the manner provided in the arbitration agreement between Plaintiff Ahmed and non-party Sun Power Capital LLC.

---

[4] This Ruling says nothing about certifying a class of plaintiffs. The three named Plaintiffs purport to act individually and on behalf of a class, Doc. 1 ("Complaint"), ¶ 44, but this Ruling directs them to arbitrate their claims, rather than litigate them, and *quaere* whether they can continue to act as class action representative plaintiffs. I do not reach that question, which counsel for the parties have not discussed.

3.  Defendants' Motion to Compel Arbitration [Doc. 31] is DISMISSED AS MOOT as to Plaintiff Kurt James, who has conceded through counsel that his claims against Defendants are subject to arbitration in the manner provided in the arbitration agreement between Plaintiff James and Venture.  Those parties are directed to proceed to arbitration accordingly.

4.  The action between Plaintiffs and Defendants is STAYED as to all parties, pending completion of the arbitrations.

5.  Defendants' alternative Motion to Dismiss the action [Doc. 31] is DENIED AS MOOT.

It is SO ORDERED,

Dated:  New Haven, Connecticut
        June 8, 2022

                                        /s/Charles S. Haight, Jr.
                                        CHARLES S. HAIGHT, JR.
                                        Senior United States District Judge