## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF CONNECTICUT

| | |
|---|---|
| KURT JAMES, JULIE STEWART, and ZAKER AHMED, on behalf of themselves and all others similarly situated, <br><br> Plaintiffs, <br> v. <br><br> VENTURE HOME SOLAR, LLC, and VENTURE SOLAR COMMERCIAL, LLC, <br><br> Defendants. | Civil Action No. 3:21 - CV - 1306 (CSH) <br><br><br><br> **FEBRUARY 6, 2024** |

### RULING ON PLAINTIFFS' MOTION FOR RECONSIDERATION OR ALTERNATIVELY, FOR CERTIFICATION OF APPEAL TO THE SECOND CIRCUIT
### [Doc. 44]

**HAIGHT, Senior District Judge:**

### I.  INTRODUCTION

In this purported class action involving claims by residential homeowners against two companies that marketed and installed solar panel systems, the principal claim is that Defendants' solar panels did not produce the promised savings in electrical bills.  Two named Plaintiffs, Julie Stewart and Zaker Ahmed, assert claims against Defendants Venture Home Solar, LLC ("Venture Home") and Venture Solar Commercial, LLC ("Venture Solar"),  on their own behalf with respect to the homes they owned, and also as purported representatives of a class of similarly situated homeowners and commercial entities in six states, including Connecticut, their state of citizenship, and five contiguous states.[1] Doc. 1 ("Complaint"), ¶¶ 1, 9.

---

[1]  The First Claim in the Complaint asserts a violation of the Connecticut Unfair Trade Practices Act ("CUTPA"), Conn. Gen. Stat. § 42-110a, *et seq.*, alleging that Venture Home "falsely

In a Ruling filed on June 8, 2022, and reported at 607 F.Supp.3d 182 (D. Conn. 2022) ("the June 8 Ruling"), familiarity with which is assumed, the Court granted Defendants' motion to compel Plaintiffs Stewart and Ahmed to submit their legal disputes with Venture Home to binding arbitration.[2] Plaintiffs opposed that motion on the ground that they were not contractually bound to arbitrate their disputes with Defendants. The Court held that Plaintiffs Stewart and Ahmed were equitably estopped from avoiding arbitration of their individual claims against Venture Home, compelled arbitration of those claims, and stayed the action (including the purported class action) as to all other parties, pending completion of the arbitration proceedings. 607 F. Supp. 3d at 192.

Plaintiffs now move [Doc. 44] for reconsideration of the June 8 Ruling, under Local Civil Rule 7( c), or, in the alternative, for certification of the June 8 Ruling for interlocutory appeal to the Second Circuit, pursuant to 28 U.S.C. § 1292(b). Plaintiffs base their motion principally upon the

---

promised Plaintiffs and the members of the Class that by installing and using a solar panel system marketed by Defendants their electricity usage bills would be fully or substantially offset and they would pay little or no money for electricity usage to their incumbent electricity provider." Doc. 1, ¶ 53. In addition to violation of CUTPA, the Complaint also asserts claims for negligent misrepresentation (Second Claim) and unjust enrichment (Third Claim).

The states of citizenship of the purported class members include Connecticut, New York, New Jersey, Rhode Island, Massachusetts, and New Hampshire. *Id.* ¶ 9.

[2] As explained in the June 8 Ruling, Defendant Venture Solar allegedly "marketed solar panel systems to *commercial* entities." 607 F. Supp. 3d at 183 (emphasis in original) (quoting Doc. 1, ¶ 11). Therefore, that Defendant was "not involved in any way with the three individual Plaintiffs, who are residential owners." *Id.* at 183-84. "In consequence, [that] Ruling turn[ed] upon the relationships between the . . . individual Plaintiffs and Defendant Venture Home." *Id.* at 184.

Also, in the June 8 Ruling, the Court dismissed as moot Defendants' "Motion to Compel Arbitration" [Doc. 31] as against Plaintiff Kurt James because that Plaintiff had "conceded through counsel that his claims against Defendants [were] subject to arbitration in the manner provided in the arbitration agreement between Plaintiff James and Venture." *Id.* at 192.

Supreme Court's recent decision in *Morgan v. Sundance, Inc.*, 596 U.S. 411 (2022), arguing that the Court "failed to consider the import" of that decision. Doc. 44, at 1. Defendants oppose Plaintiffs' motion for reconsideration based on Plaintiffs' untimeliness in filing and failure to present a sufficient basis for reconsideration. Doc. 46.

In an electronic order [Doc. 45], the Court granted Plaintiffs' application to consider their reconsideration motion, otherwise untimely, on its merits *nunc pro tunc.* For the reasons that follow, the motion for reconsideration will be denied on its merits.

## II.  STANDARD FOR RECONSIDERATION

"A motion for reconsideration is committed to the sound discretion of the court." *Sparano v. JLO Auto., Inc.*, No. 3:19-CV-00681 (VAB), 2021 WL 4810577, at *1 (D. Conn. Oct. 15, 2021) (citation omitted). "The standard for granting [a motion for reconsideration] is strict." *Shrader v. CSX Transp., Inc.*, 70 F.3d 255, 257 (2d Cir. 1995)); *see also* D. Conn. Civ. R. 7(c)(1) ("Motions for reconsideration shall not be routinely filed and shall satisfy the strict standard applicable to such motions."). The court should only grant reconsideration if "the moving party can point to controlling decisions or data that the court overlooked—matters, in other words, that might reasonably be expected to alter the conclusion reached by the court." *Shrader*, 70 F.3d at 257 (citing *Schonberger v. Serchuk*, 742 F. Supp. 108, 119 (S.D.N.Y. 1990)). *See also Adams v. United States*, 686 F. Supp. 417, 418 (S.D.N.Y.1988) (collecting cases). The three primary grounds "justifying reconsideration are an intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice." *Virgin Atl. Airways, Ltd. v. Nat'l Mediation Bd.*, 956 F.2d 1245, 1255 (2d Cir. 1992) (citations and internal quotation marks omitted).

Additionally, "a motion to reconsider should not be granted where the moving party seeks

3

solely to relitigate an issue already decided." *Shrader*, 70 F.3d at 257.  In other words, a motion for reconsideration is "not a vehicle for relitigating old issues, presenting the case under new theories, securing a rehearing on the merits, or otherwise taking a 'second bite at the apple'...." *Analytical Survs., Inc. v. Tonga Partners, L.P.,* 684 F.3d 36, 52 (2d Cir. 2012) (quoting *Sequa Corp. v. GBJ Corp.*, 156 F.3d 136, 144 (2d Cir.1998)), *as amended* (July 13, 2012).  *See also, e.g., Doe v. Winchester Bd. of Educ.*, No. 10-CV-1179 (VAB), 2017 WL 662898, at *2 (D. Conn. Feb. 17, 2017) ("A motion for reconsideration is not a means to reargue those issues already considered when a party does not like the way the original motion was resolved.") (citation omitted).

"A motion for reconsideration is committed to the sound discretion of the court." *Dingwell v. Cossette*, No. 3:17-CV-01531(KAD), 2021 WL 413619, at *1 (D. Conn. Feb. 5, 2021) (citation and internal quotation marks omitted).  Therefore, "[d]enials of motions for reconsideration are reviewed only for abuse of discretion." *Analytical Survs.*, 684 F.3d at 52 (quoting *Empresa Cubana del Tabaco v. Culbro Corp.*, 541 F.3d 476, 478 (2d Cir. 2008) (*per curiam*)).  "Reconsideration motions are 'a mechanism for extraordinary judicial relief invoked only if the moving party demonstrates exceptional circumstances.' " *Wachovia Mortg., FSB v. Toczek*, 841 F. App'x 267, 272 (2d Cir. 2021) (quoting *Ruotolo v. City of New York*, 514 F.3d 184, 191 (2d Cir. 2008)). *See also Mirlis v. Greer,* No. 3:18-CV-2082 (MPS), 2021 WL 1711649, at *2 (D. Conn. Apr. 30, 2021).

## III.  DISCUSSION

### A.  *Morgan v. Sundance, Inc.,* **596 U.S. 411 (2022)**

In seeking reconsideration in the case at bar, Plaintiffs regard the Supreme Court's decision in *Morgan v. Sundance, Inc.*, 596 U.S. 411 (2022)*,* as a "controlling decision" this Court "overlooked," in that "the Court failed to consider the import" of *Morgan* and "otherwise failed to

properly apply the relevant standards for determining whether a party should be compelled to arbitration against a party."  Doc. 44, at 1.

In *Morgan*, the Supreme Court issued "[a] directive to a federal court to treat arbitration applications 'in the manner provided by law' for all other motions," which "is simply a command to apply the usual federal procedural rules, including any rules relating to a motion's timeliness." 596 U.S. at 419.  "Or put conversely, it is a bar on using custom-made rules, to tilt the playing field in favor of (or against) arbitration."  *Id.*

As summarized by Justice Kagan for a unanimous Court:

The policy is to make "arbitration agreements as enforceable as other contracts, but not more so." *Prima Paint Corp. v. Flood & Conklin Mfg. Co.*, 388 U.S. 395, 404, n. 12 (1967). Accordingly, a court must hold a party to its arbitration contract just as the court would to any other kind. But a court may not devise novel rules to favor arbitration over litigation. *See Dean Witter Reynolds Inc. v. Byrd*, 470 U.S. 213, 218–221 (1985). If an ordinary procedural rule—whether of waiver or forfeiture or what-have-you—would counsel against enforcement of an arbitration contract, then so be it. The federal policy is about treating arbitration contracts like all others, not about fostering arbitration.

*Id.* at 418 (lateral citations omitted).

In the *Morgan* case, petitioner Robyn Morgan was employed as an hourly employee at a Taco Bell franchise owned by respondent Sundance. In applying for employment, Morgan signed an agreement to arbitrate any employment dispute.  Thereafter, Morgan filed a nationwide collective action against Sundance for violating federal law regarding overtime payment. Failing to invoke the arbitration contract, Sundance defended against Morgan's action in court, filed an unsuccessful motion to dismiss, and engaged in failed mediation. Then, eight months after Morgan commenced the action, Sundance moved to stay the litigation and compel arbitration under the Federal Arbitration Act ("FAA").  Morgan opposed the stay, asserting that Sundance had waived its right

to arbitrate by litigating for such a lengthy period.  The District Court applied Eighth Circuit precedent, which held that "a party waives its contractual right to arbitration if it knew of the right; acted inconsistently with that right; and . . . prejudiced the other party by its inconsistent actions." 596 U.S. at  415 (quoting *Erdman Co. v. Phoenix Land & Acquisition*, LLC, 650 F.3d 1115, 1117 (8ᵗʰ Cir. 2011)) (internal quotation marks omitted).  As recounted by the Supreme Court, the District Court in *Morgan* then found the prejudice requirement satisfied and held that a waiver had occurred. *Id.*

On appeal, the Eighth Circuit reversed and sent Morgan's case to arbitration.  992 F.3d at 715.[3]  The panel majority found that "Morgan was not prejudiced by Sundance's litigation strategy" where the parties had neither conducted formal discovery nor contested any matters going to the merits.  *Id*.  In the dissent, Judge Colloton raised doubts regarding the Eighth Circuit's "prejudice requirement," noting that "in ordinary contract law, a waiver normally is effective without proof of consideration or detrimental reliance." *Id.* at 716 (citations omitted).  He also observed that "some circuits  allow a finding  of waiver of arbitration without a showing of prejudice." *Id.* at 716–17 (citations omitted).

Because other circuits had rejected the prejudice requirement, the Supreme Court granted certiorari "to resolve that circuit split."[4] 596 U.S. at 416.   The Court explained that the "single

---

[3] *See Morgan v. Sundance, Inc.*, 992 F.3d 711 (8th Cir. 2021), *cert. granted*, 142 S. Ct. 482, 211 L. Ed. 2d 292 (2021), *and vacated and remanded,* 596 U.S. 411 (2022).

[4] Nine circuits, including the Second Circuit, had "invoked 'the strong federal policy favoring arbitration' in support of an arbitration-specific waiver rule demanding a showing of prejudice." *Morgan*, 596 U.S. at 416 n.1 (citing, *inter alia*, *Carcich v. Rederi A/B Nordie*, 389 F.2d 692, 696 (2d Cir. 1968)).  Two circuits, the Seventh and District of Columbia Circuits,  had rejected the prejudice requirement.  *Id.* n. 2.

issue" it had set out to determine was whether the Courts of Appeals, like the Eighth, "may create arbitration-specific variants of federal procedural rules, like those concerning waiver, based on the FAA's 'policy favoring arbitration.'" *Id.* at 417 (quoting *Moses H. Cone Memorial Hospital v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983)). The clear answer was, "They cannot." *Id.* And "[f]or that reason, the Eighth Circuit was wrong to condition a waiver of the right to arbitrate on a showing of prejudice." *Id.*

"Outside the arbitration context, a federal court assessing waiver does not generally ask about prejudice." *Id.* at 417. Therefore, by inserting a prejudice requirement into its waiver inquiry, the appellate court had failed to treat the arbitration application in the "manner provided by law" for all other motions. *Id.* at 419. Rather than inserting "a prejudice requirement" into the federal rule of waiver, by stripping said prejudice requirement, "the Eighth Circuit's current waiver inquiry would focus on Sundance's conduct" to determine whether Sundance had knowingly relinquished the right to arbitrate by "acting inconsistently with that right." *Id.* The Supreme Court thus remanded the case back to the Court of Appeals to "resolve that question, or (as indicated above) determine that a different procedural framework (such as forfeiture) is appropriate." *Id.* In short, the Supreme Court solely held that the Eighth Circuit "may not make up a new procedural rule based on the FAA's 'policy favoring arbitration.'" *Id.*

## B.  June 8 Ruling and *Doe v. Trump Corp.*,  6 F.4th 400 (2d Cir. 2021)

With respect to the case at bar, the Court did not run afoul of the Supreme Court's ruling in *Morgan*. No place in *Morgan* did the Supreme Court state that common law principles of contract may not be applied to determine whether a dispute must be submitted to arbitration.  Rather, the Court barred pro-arbitration variants of federal procedural rules. The Eighth Circuit in *Morgan*

added the factor of "prejudice" to avoid finding waiver of a party's right to arbitrate. 596 U.S. at 417-18.  Citing Second Circuit authority in *Carcich v. Rederi A/B Nordie*, 389 F.2d 692, 696 (2d Cir. 1968),  the *Morgan* Court explained that the Eighth Circuit had erroneously derived its prejudice requirement from that "decades-old Second Circuit decision," which expressly grounded the rule in the "federal policy favoring arbitration." *Id.* at 417.  Quoting *Carcich* with disfavor , the *Morgan* court plainly abrogated that court's  statement that "'[m]ere delay' in seeking a stay of litigation, 'without some resultant prejudice' to the opposing party, 'cannot carry the day.'" *Id.* at 417-18 (quoting and abrogating *Carcich*, 389 F.2d at 696).

In contrast, *Morgan* did not state that the well-established contract doctrine of equitable estoppel can never come into play in determining whether a non-signatory and a signatory may be compelled to arbitrate.  Rather, the *Morgan* Court created "[a] directive to a federal court to treat arbitration applications 'in the manner provided by law' *for all other motions* . . . a command to apply the usual federal procedural rules, including any rules relating to a motion's timeliness." *Id.* at 419 (emphasis added).

*Morgan* did not, therefore, abrogate the Second Circuit's holding in  *Doe v. Trump Corporation,* 6 F.4th 400 (2d Cir. 2021), and *Choctaw Generation Limited Partnership v. American Home Assurance Company,* 271 F.3d 403, 404 (2d Cir. 2001)–decisions this Court followed in its June 8 Ruling.  In the June 8 Ruling, the Court applied two general factors, identified by Second Circuit precedents, relating to equitable estoppel.  Equitable estoppel may arise: first, if there exists "intertwining of contractual obligations;" and second, if there is "a relationship between signatory and non-signatory parties whose nature justifies the invocation of equitable estoppel as a bar to

avoiding arbitration of disputes between them."[5] *James v. Venture Home Solar, LLC*, 607 F. Supp. 3d 182, 191 (D. Conn. 2022).  These typical considerations regarding estoppel are not barred by *Morgan*. If anything, such factors provide normal contractual considerations to avoid an unjustified basis to arbitrate.  Put simply, the  common law contract principle of estoppel is not enhanced or altered to favor arbitration.[6]

As the Second Circuit emphasizes in *Doe v. Trump Corporation*, "[t]his does not mean . . . that whenever a relationship of any kind may be found among the parties to a dispute and their

---

[5]   In the case at bar, both factors were present.  Plaintiffs Julie Stewart and Zaker Ahmed entered  contracts with third-party solar companies with which Venture Home Solar, LLC had contracted to install solar panels.  Doc. 31-2, ¶¶ 6-7.  On January 21, 2020, Stewart entered into a contract with a company called Sunnova Energy Corporation ("Sunnova") for the installation of solar panels on her residence.  *Id.* ¶ 7; Doc. 31-4, at 33.  Stewart's contract with Sunnova included Venture Home Solar, LLC as a subcontractor/installer.  Doc. 31-2 (Yackery Decl. ¶¶ 7-8).  That contract specifically stated that "Venture Home Solar, LLC and Sunnova will install a 6.650-kW solar system on your home." Doc. 31-4, at 2. The contract further specified that "Venture Home Solar, LLC will complete the design and engineering drawings for your system, and Sunnova will review the final design to ensure it meets our high quality standards."  *Id.*

Similarly, Plaintiff Zaker Ahmed entered into a contract with Sun Power Capital LLC ("Sun Power") on or about November 10, 2017, for the installation of solar panels on his residence. Doc. 31-2, ¶ 10; Doc. 31-5, at 28.  That contract listed "Venture Solar" as the "Dealer/Installer" of the solar panel system.  Doc. 31-2, ¶ 11; Doc. 31-5, at 2, 16.  However, one can logically  infer in the context of installation of solar panels for *residential customers*, such as Ahmed,Venture Solar would actually be "Venture Home Solar, LLC."  Furthermore, the Court takes judicial notice that the street address for Venture Solar appearing on the contract,  240 Kent Avenue, Brooklyn, New York [Doc. 31-5, at 16] is consistent with the address of "Venture Home Solar" published on the internet.  *See* https://www.unitedstatesbd.com/pro/venturehomesolar/venture-home-solar.

[6]   In general,"[e]quitable estoppel is grounded on notions of fair dealing and good conscience and is designed to aid the law in the administration of justice where injustice would otherwise result." *In re Vebeliunas*, 332 F.3d 85, 93 (2d Cir. 2003) (quoting  *In re Ionosphere Clubs. Inc.*, 85 F.3d 992, 999 (2d Cir.1996)).  "The doctrine of equitable estoppel is properly invoked where the enforcement of the rights of one party would work an injustice upon the other party due to the latter's justifiable reliance upon the former's words or conduct." *Id.* (quoting  *Kosakow v. New Rochelle Radiology Assocs., P.C.*, 274 F.3d 706, 725 (2d Cir. 2001)).

dispute deals with the subject matter of an arbitration contract made by one of them, that party will be estopped from refusing to arbitrate." 6 F.4th at 412 (quoting *Ragone v. Atl. Video at Manhattan Ctr.*, 595 F.3d 115, 127 (2d Cir. 2010)).  Rather than favoring arbitration, the Second Circuit in *Doe* applies federal contract principles of equitable estoppel, invoking estoppel where the enforcement of the rights of one party would work an injustice upon the other party due to the latter's justifiable reliance upon the former's words or conduct. In conducting this analysis, *Doe* makes arbitration no more or less likely.

In *Morgan*, the Supreme Court's goal was "[t]he policy . . . to make arbitration agreements as enforceable as other contracts, but not more so." 596 U.S. at 418 (citation and internal quotation marks omitted).  Specifically, "a court must hold a party to its arbitration contract just as the court would to any other kind." *Id.*  The Court's "sole holding [was] that it may not make up *a new procedural rule* based on the FAA's 'policy favoring arbitration.'" *Id.* at 419 (emphasis added).  In fact, the *Morgan* Court recognized that the Eighth Circuit had attempted to resolve the arbitration question "as a matter of federal law, using the terminology of waiver," and "assume[d] without deciding that they [were] right to do so." *Id.* at 416-17.  However, it was only the Eighth Circuit's "next step in [its] reasoning" – the creation of an arbitration-specific variant based on the FAA's policy "favoring arbitration" – that led the Supreme Court to conclude that "the Eighth Circuit was wrong." *Id.* at 417.

In the June 8 Ruling at issue, I explained that even though "a party ... cannot be required to submit to arbitration any dispute which it has not agreed to submit," there are "a number of common law principles of contract law that may allow non-signatories to enforce an arbitration agreement, including equitable estoppel." 607 F. Supp. 3d at 186 (quoting *Doe v. Trump Corp.*, 6 F.4th at 412).

To invoke equitable estoppel, the non-signatory must satisfy two criteria: (1) "the claims that the nonsignatory sought to arbitrate were intimately founded in and intertwined with the underlying contract obligations," *id.* at 187 (quoting *Doe,* 6 F.4th at 412, and *Choctaw Generation Ltd.*, 271 F.3d at 406); and (2) "there must also be a relationship among the parties of a nature that justifies a conclusion that the party which agreed to arbitrate with another entity should be estopped from denying an obligation to arbitrate a similar dispute with the adversary which is not a party to the arbitration agreement," *id.* (quoting *Doe,* 6 F.4th at 412-13).

### C. Plaintiffs' Arguments [Doc. 44-1]

In their Memorandum in support of reconsideration, Plaintiffs point out that it is undisputed that the arbitration agreements at issue "do not identify [Defendant] Venture Home as a party to any agreement to arbitrate." Doc. 44-1, at 3. Therefore, they assert, absent the application of equitable estoppel in the arbitration context, "there would be no room or occasion to otherwise apply equitable estoppel here." *Id.* at 3-4.

Plaintiffs note that in *Morgan*, "the Supreme Court held that [a] court must hold a party to its arbitration contract just as the court would to any other kind of contract[;] [b]ut a court may not devise novel rules to favor arbitration over litigation." *Id.* at 4 (quoting *Morgan*, 596 U.S. at 412). Accordingly, the Court "abrogated the Second Circuit's decision in *Carcich v. Rederi A/B Nordie*, 389 F.2d 692, 696 (2d Cir. 1968), which the Supreme Court cited as the decision that first engrafted the nontraditional requirement of prejudice onto a claim of waiver in the arbitration context based on the 'overriding federal policy favoring arbitration.'" *Id.* (quoting *Morgan*, 596 U.S. at 417).

Plaintiffs note that the "perceived federal policy favoring arbitration has been the central rationale for courts invoking equitable estoppel in the arbitration context." *Id.* at 4 (internal

quotation marks omitted) (citing, *inter alia*, *Atricure, Inc. v. Meng*, 12 F.4th 516, 529 (6th Cir. 2021)).  Furthermore, Plaintiffs believe that *Morgan* controls the present case because "the courts invoking equitable estoppel to foster the federal policy favoring arbitration have, in doing so, jettisoned the element of detrimental reliance, traditionally required for common law equitable estoppel."[7] *Id.* at 5 (quoting *Atricure*, 12 F.4th at 529).  After *Morgan*, Plaintiffs assert, "this is no longer permissible."  *Id.*

Plaintiffs conclude that *Morgan* has, "in effect, abrogated the Second Circuit's equitable estoppel arbitration jurisprudence," which is "similar to its abrogation of the waiver case *Carcich*."  *Id.* at 6.  Therefore, they contend that the Court should examine the plain language of the contracts at issue and hold that Plaintiffs should not be "forced to arbitrate against someone who is 'not a party." *Id.* at 7.  To them, Venture Home is the "wrongdoer"–the one whose "false language or conduct led another to do that which the other party would not otherwise have done"–and is being awarded a "get-out-of-jail-free" pass by the Court's application of the principle of estoppel.  *Id.* at 8 & n. 3 (citations omitted).

Plaintiffs further assert that "in the event this Court is of the view that this [equitable estoppel] test continues to apply post-*Morgan*, reconsideration is still warranted because the Court failed to properly apply the standards for equitable estoppel as it requires detrimental reliance, which is lacking here and because such a ruling would result in the unfair and absurd result that is contrary to the very terms of the Sun Power and Sunnova contracts" with Plaintiffs.  *Id.* at 3.

_____

[7] Plaintiffs argue that the Court has "fail[ed] to properly apply the reliance requirement that the courts of the states at issue in this case require for equitable estoppel." Doc. 44-1, at 7-8 (collecting state law cases from New York, Connecticut, Rhode Island, Massachusetts, and New Hampshire).

Lastly, in the alternative, Plaintiffs state that interlocutory appeal is warranted under 28 U.S.C. § 1292(b) due to the presence of a "controlling question of law." *Id.* at 9. In Plaintiffs' words –

> *Morgan* constitutes an intervening change in the law. The propriety of injecting a pared-down equitable estoppel doctrine to arbitration agreements is a "pure" question of law susceptible to interlocutory appeal as "controlling." *See Balintulo v. Daimler AG*, 727 F.3d 174, 186 (2d Cir. 2013). There is substantial ground for difference of opinion about whether equitable estoppel should ever be applied to compel arbitration against nonsignatories, and, if so, whether the traditional element of reliance is required.

*Id.*

Finally, as to "advanc[ing] the ultimate termination of the litigation," 28 U.S.C. § 1292(b), Plaintiffs argue that the Court's decision "effectively terminates" their ability to "get any effective relief" in either arbitration (due to the bar against non-parties in the Sun Power agreement) or in federal court in a class action. *Id.*

## D. Defendant Venture Home's Opposition [Doc. 46]

Defendants oppose Plaintiffs' reconsideration motion on multiple grounds. First, they note that "Plaintiffs rely on a Supreme Court opinion decided *before the Court's Ruling*—which Plaintiffs specifically brought to the Court's attention in a "Notice of Supplemental Authority" [Doc. 42] a week before the Court issued its Ruling — and which has nothing to do with the issue decided in the Ruling." Doc. 46, at 6 (emphasis added). Thereafter, Plaintiffs "assert an argument they already raised in opposition to Defendants' Motion to Compel and an argument that they expressly waived in opposition" to that motion. *Id.* Therefore, no argument presented by Plaintiffs provides a valid basis for reconsideration of the Court's June 8 Ruling. *Id.*

At the outset, Defendants frame the Supreme Court's decision in *Morgan v. Sundance, Inc.*

as "irrelevant to the issue of estoppel." *Id.*   Not only did the Court receive *Morgan* prior to issuing

the June 8 Ruling, that case is "entirely inapplicable to the issue decided by the Court in its Ruling."

*Id.*  In *Morgan*, the main issue was whether the defendant had "waived its right to arbitrate a dispute

by engaging in litigation in Court" and, after failing to succeed, "switching tactics and moving to

compel arbitration."  *Id.*  (citing *Morgan,* 596 U.S. at 413). The Supreme Court held that some of

the Circuits had "improperly imposed a requirement that the plaintiff demonstrate it was prejudiced

by the delay and change in tactics, explaining that 'usual federal rule of waiver does not include a

prejudice requirement,' so the rule for arbitration should not either." *Id*. at 6-7  (citing *Morga*n, 596

U.S. at 419).  However,  the issue of "whether a party can be estopped  from avoiding a demand for

arbitration by a non-party was not at issue in *Morgan*." *Id.* at 7.

Furthermore, the *Morgan* holding provides "nothing new."  *Id.*  The *Morgan* Court cited

Supreme Court precedent from 2010, *Granite Rock Co. v. Teamsters*, 561 U.S. 287, 302 (2010),

which  had further quoted a Supreme Court case from 1989, *Volt Information Sciences, Inc. v. Board*

*of Trustees*, 489 U.S. 468, 474 (1989)).  In citing these cases, the Supreme Court merely reminded

courts that the FAA "does not authorize federal courts to invent special, arbitration-preferring

procedural rules." Doc. 46,  at 7 (quoting  *Morgan,* 596 U.S. at 418).  In other words, *Morgan* was

"merely an acknowledgment of the FAA's commitment to overrule the judiciary's longstanding

refusal to enforce agreements to arbitrate and to place such agreements upon the same footing as

other contracts.'" *Id.* (quoting  *Morgan*,596 U.S. at 418, which in turn quoted *Granite Rock Co.*, 561

U.S. at 302).

As Defendants note, this Court relied on *Doe v. Trump Corp.*, 6 F.4th 400, 412 (2d Cir. 2021)

in making the June 8 Ruling.  Doc. 46, at 7.   *Doe*  was issued years after the principles discussed

in *Morgan* (as contained in both *Granite Rock* and *Volt Information Sciences*). *Id.*

## E. Court's Analysis

### 1. Reconsideration

Having reviewed the parties' arguments in full, the Court has decided that reconsideration is not warranted in the present case. The *Morgan* case reiterated a principle long recognized by the Second Circuit that "[w]hile the FAA expresses a strong federal policy in favor of arbitration, the purpose of Congress in enacting the FAA 'was to make arbitration agreements as enforceable as other contracts, but not more so.'" *Ross v. Am. Express Co.,* 547 F.3d 137, 143 (2d Cir. 2008) (quoting *Cap Gemini Ernst & Young, U.S., L.L.C. v. Nackel*, 346 F.3d 360, 364 (2d Cir. 2003)). That principle, as recited in *Morgan,* is not new to the Second Circuit so does not undermine its estoppel precedents in cases like *Doe* and *Choctaw.*

Furthermore, even if *Morgan* had an impact on the application of federal estoppel, this Court cannot disregard Second Circuit precedent on estoppel unless or until the Second Circuit overrules such precedent. *See, eg., Monsanto v. United States*, 348 F.3d 345, 351 (2d Cir. 2003) (District courts and even subsequent Second Circuit panels "are required to follow" Circuit precedent even if it is in "tension" with subsequent Supreme Court precedent unless and until that case is reconsidered by our court [the Second Circuit] sitting in banc (or its equivalent) or is rejected by a later Supreme Court decision."); *see also In re Application of Hanwei Guo*, No. 18-MC-561 (JMF), 2019 WL 917076, at *3 (S.D.N.Y. Feb. 25, 2019) ("A district court, however, must follow Second Circuit precedent 'unless and until it is overruled in a precedential opinion by the Second Circuit itself or unless a subsequent decision of the Supreme Court so undermines it that it will almost inevitably be overruled by the Second Circuit.'"), *aff'd sub nom. In Re Guo*, 965 F.3d 96 (2d Cir.

2020)  (citations omitted).

Here, the Court carefully applied the two conditions of estoppel set forth in *Doe v. Trump Corp.*, which was not abrogated by *Morgan*.  As other district courts within this Circuit have repeatedly held post-*Morgan*, this Court must adhere to relevant Second-Circuit precedent which remains in effect.  *See, e.g., Greene v. Kabbalah Ctr. Int'l, Inc.*, 625 F. Supp. 3d 3, 20 (E.D.N.Y. 2022) ("Under principles of estoppel, a non-signatory to an arbitration agreement may compel a signatory to that agreement to arbitrate a dispute where a careful review of 'the relationship among the parties, the contracts they signed ..., and the issues that had arisen' among them discloses that 'the issues the nonsignatory is seeking to resolve in arbitration are intertwined with the agreement that the estopped party has signed.' ") (quoting *Ragone*, 595 F.3d at 126-27;  *Padula v. eBay*, No. 21-CV-05391 (MKB) (SJB), 2022 WL 18456614, at *6 (E.D.N.Y. Dec. 29, 2022) (applying *Doe v. Trump Corp.* estoppel factors), *report and recommendation adopted*, No. 21-CV-5391 (MKB) (SJB), 2023 WL 375554 (E.D.N.Y. Jan. 24, 2023); *Silent Gliss Inc. v. Silent Gliss Int'l Ltd.*, No. 22-CV-522 (EK)(MMH), 2023 WL 1863362, at *4 (E.D.N.Y. Feb. 9, 2023) ("Under principles of estoppel," the court applies the "two conditions" set forth in *Doe v. Trump Corp.* to determine if "a non-signatory to an arbitration agreement may compel a signatory to that agreement to arbitrate a dispute.") (citing *Sokol Holdings, Inc. v. BMB Munai, Inc.*, 542 F.3d 354, 358 (2d Cir. 2008) and *Doe v. Trump*, 6 F.4th at 412-13).

Furthermore, Plaintiffs' argument that the Court failed to properly apply the "reliance requirement" for equitable estoppel, arising under state law,  lacks merit.  The *Morgan* case expressly addressed federal rules regarding waiver and vocally declined to decide the role of state

law in this matter.[8]  *Morgan*, 596 U.S. at 416.

Moreover, Plaintiffs essentially conceded their argument regarding reliance on state law estoppel principles when they argued in opposition to Defendants' Motion to Compel that federal law, as opposed to state law, applies in this case.  Doc. 38 (Plaintiffs' Opposition), at 11.  In particular, Plaintiffs wrote:

> Although 'state law governs whether a non-signatory may enforce an arbitration clause,' where, as here, the parties do not contend a particular state's law applies, *this Court may apply Second Circuit precedent*.

Doc. 38, at 11 (emphasis added) (quoting *Doe. v. Trump Corp.*, 6 F.4th at 412 n.8).  Having failed to make their argument regarding state law in their original Opposition, Plaintiffs have waived that argument.  *See, e.g., Packer v. SN Servicing Corp.*, 250 F.R.D. 108, 112 (D. Conn. 2008) ("It is well settled that a failure to brief an issue is grounds to deem the claim abandoned.") (citations omitted); *In re Ethylene Propylene Diene Monomer (EPDM) Antitrust Litig.*, 681 F. Supp. 2d 141, 181 (D. Conn. 2009) ("Motions for reconsideration are not designed to allow parties to make arguments that they could have and should have made before the court ruled.") (citation omitted).

Furthermore, even if Plaintiffs were allowed to present their "detrimental reliance" factor, the facts suggest that Defendants relied on Plaintiffs' agreement to arbitrate any disputes on an individual basis.  As this Court previously stated, "the specific identification of Venture Home in

---

[8]  The *Morgan* Court stated, in relevant part:

> In their briefing, the parties have disagreed about the role state law might play in resolving when a party's litigation conduct results in the loss of a contractual right to arbitrate. The parties have also quarreled about whether to understand that inquiry as involving rules of waiver, forfeiture, estoppel, laches, or procedural timeliness. We do not address those issues.

*Morgan*, 596 U.S. at 416.

Plaintiffs' contracts with Sunnova or Sun Power as the 'subcontractor,' 'dealer' or 'installer' of the solar panel systems, leads readily to the inference (which I draw) that in signing those contracts, the Plaintiffs 'had knowledge of, and consented to, the extension of their agreement to arbitrate to the non-signatories.'" *James*, 607 F. Supp. 3d at 192 (quoting *Doe*, 6 F.4th at 414).

Additionally, the Court need not reconsider previously-made arguments such as Plaintiffs' assertion in their Opposition to the "Motion to Compel" that Sunnova and Sun Power contracts define the parties as the Sunnova and Sun Power companies and their "successors and assigns." Doc. 38 (Pls.' Opp. To Mot. to Compel),  at 16-17 (arguing that "Venture Solar is neither Sunnova nor an assignee of the Stewart- Sunnova agreement, and thus the arbitration agreement cannot apply to it" and making the same argument based on the Ahmed-Sun Power Agreement).  Plaintiffs may not re-argue points in their prior briefs in an attempt to take a second bite at the apple. *Analytical Survs.*, 684 F.3d at 52.  This Court previously considered and rejected those arguments in full.[9]

---

[9] The Court specifically quoted the language in the Sunnova and Sun Power contracts and recognized that "You" referred only to Stewart and Ahmed and "We" only to  Sunnova and Sun Power, respectively.  607 F. Supp. 3d at 185.  Rather, the issue was whether Venture could enforce the arbitration provision in the contracts with Sunnova and Sun Power against Stewart and Ahmed. *Id.*

Similarly, the Court previously considered and chose not to credit Plaintiffs' argument regarding the language in the Ahmed-Sun Power agreement that an arbitrator shall not "award relief for or against anyone who is not a party." Doc. 44-1, at 6-7; *see also* Doc. 38, at 6.  Such a provision only bars the arbitrator from awarding relief to someone who is not a party *to the arbitration*.  In this case, where Venture seeks to compel arbitration, it cannot argue that the dispute is not arbitrable or question the arbitrator's authority to grant relief. *See ConnTech Dev. Co. v. Univ. of Connecticut Educ. Properties, Inc.*, 102 F.3d 677, 685 (2d Cir. 1996) ("One who voluntarily participates in arbitration will not thereafter be heard to complain that the arbitrator was without authority to act.") (quoting  *Int'l Longshoremen's Ass'n, AFL-CIO v. W. Gulf Mar. Ass'n*, 594 F. Supp. 670, 674 (S.D.N.Y. 1984)).

## 2. *Certification*

Finally, Plaintiffs have failed to meet the requirements for certification to the Second Circuit. Section 16(b) of the the Federal Arbitration Act ("FAA")  provides generally that "an appeal may not be taken from an interlocutory order ... granting a stay of any action under section 3 of this title," 9 U.S.C. § 16(b)(1), or "compelling arbitration under section 206 of this title," *id.* § 16(b)(3). However, Section 16(b) permits appellate review of orders that a district court certifies for interlocutory appeal pursuant to 28 U.S.C. § 1292(b).  *See* 9 U.S.C. § 16(b); *Murray v. UBS Sec., LLC*, No. 12 CIV. 5914 (KPF), 2014 WL 1316472, at *2 (S.D.N.Y. Apr. 1, 2014).

Pursuant to  28 U.S.C. § 1292(b) of the FAA, "[w]hen a district judge, in making in a civil action an order not otherwise appealable under this section, shall be of the opinion that such order involves a controlling question of law as to which there is substantial ground for difference of opinion and that an immediate appeal from the order may materially advance the ultimate termination of the litigation, he shall so state in writing in such order."  Then, upon certification as an interlocutory appeal from the district court, the relevant Court of Appeals may, "in its discretion, permit an appeal to be taken from such order."  *Id.* Accordingly,  a party may receive appellate review of an order compelling arbitration and staying an action if the district court certifies the order for interlocutory review.

Specifically, in order to certify an order for interlocutory appeal, the district court must determine and state in writing that such order "[1] involves a controlling question of law [2] as to which there is substantial ground for difference of opinion and that [3] an immediate appeal from the order may materially advance the ultimate termination of the litigation . . . ." 28 U.S.C.A. § 1292 (b).  Because the statute is strictly construed, all three criteria must be met for the district

court to certify an order. *See, e.g., Klinghoffer v. S.N.C. Achille Lauro*, 921 F.2d 21, 25 (2d Cir. 1990) ("[T]he power [to grant an interlocutory appeal] must be strictly limited to the precise conditions stated in the law.") (citation omitted). *See also Casey v. Long Island R.R. Co.*, 406 F.3d 142, 146 (2d Cir. 2005) ("To warrant our granting leave to appeal pursuant to [§ 1292(b)], (a) the appeal must concern a question 'of law,' (b) that question must be one that is 'controlling,' and (c) that controlling question of law must be one 'as to which there is substantial ground for difference of opinion.'").

As discussed *infra*, in their motion for certification, Plaintiffs have failed to establish the necessary criteria to obtain interlocutory appeal. Moreover, "[e]ven where these criteria are met, the Court retains discretion to deny permission for interlocutory appeal, mindful that '[i]t is a basic tenet of federal law to delay appellate review until a final judgment has been entered.'" *Kuzinski v. Schering Corp.*, 614 F. Supp. 2d 247, 249 (D. Conn. 2009) (quoting *Koehler v. Bank of Bermuda Ltd.*, 101 F.3d 863, 865 (2d Cir. 1996)). "Interlocutory appeals are disfavored, and, because the procedure was not intended as a vehicle to provide early review of difficult rulings in hard cases, a party seeking to appeal must demonstrate exceptional circumstances justifying it." *Id.* (citation and internal quotation marks omitted).

As to the first statutory factor of § 1292(b), in the case at bar, there is no "controlling question of law"—one upon which "reversal of the district court's order would terminate the action." *Klinghoffer*, 921 F.2d at 24. Here, a reversal would have the opposite effect by returning the case to federal court to proceed with litigation, not end it.

Similarly, in deciding whether there is a controlling question of law, a district court may "consider whether 'reversal of the district court's opinion, even though not resulting in dismissal,

20

could significantly affect the conduct of the action; or, the certified issue has precedential value for

a large number of cases.'" *Murray*, 2014 WL 1316472, at *3 (quoting *Dev. Specialists, Inc. v. Akin*

*Gump Strauss Hauer & Feld LLP*, No. 11 Civ. 5994 (CM), 2012 WL 2952929, at *4 (S.D.N.Y. July

18, 2012)).  As in the case at bar, "[t]o be sure, reversal could affect the 'conduct' of the action by

eliminating the arbitration, but such a consequence is not sufficient to warrant certification." 2014

WL 1316472, at *4.   "Indeed—and as certainly contemplated by Congress in enacting, and then

clarifying, Section 16(b)—courts in this Circuit have denied motions for certification where

reversals of the orders at issue would have allowed the parties to forgo arbitration entirely." *Id.* at

*4 (collecting cases).  Furthermore, Plaintiffs have failed to present any other cases for which the

certified issue would have precedential value.  Absent the first of the three criteria, there is no

"controlling question of law."

 Second, there appears to be no "substantial ground for difference of opinion" on the present

issue, 28 U.S.C. § 1292(b).  To fulfill this element, Plaintiffs must show that "(1) there is conflicting

authority on an issue or (2) the case is particularly difficult and of first impression within this

Circuit." *U.S. ex rel. Drake v. NSI, Inc.*, 736 F. Supp. 2d 489, 503 (D. Conn. 2010) (citing *Consub*

*Del. LLC v. Schahin Engenharia Limitada*, 476 F. Supp. 2d 305, 308-09 (S.D.N.Y. 2007)).

Plaintiffs have shown neither.  "Substantial ground for a difference of opinion requires more than

a claim that the court's ruling was wrong." *Drake,* 736 F. Supp. 2d at 503 (citation omitted).

"Similarly, simply because a question is particularly difficult does not mean that there is a difference

of opinion." *Id.* (citation omitted).

 With respect  to prong (1), there is no "conflicting authority" created by *Morgan*.  As

explained *supra*, *Morgan* focuses on a different issue—one with no bearing on the estoppel issue

21

at bar. *Morgan* holds that "a court may not devise novel rules to favor arbitration over litigation." 596 U.S. at 418. And language to that effect was quoted long ago, in both *Granite Rock*, 561 U.S. at 302; and *Volt Info Scis.*, 489 U.S. at 468.[10] Both before and after *Granite Rock* and *Volt*, the Second Circuit has decided numerous cases involving non-signatories to an arbitration agreement with estoppel; and the Supreme Court's reemphasis of the principle stated in *Morgan* has not abrogated such precedent.[11] *See, e.g., Doe v. Trump*, 6 F.4th at 412*; Ragone*, 595 F.3d at 126; *Ross*, 547 F.3d at 144-45; *Choctaw*, 271 F.3d at 406. *See also Shepherd v. Belkin Int'l, Inc.*, No. 21-CV-5862 (BMC), 2023 WL 4745681, at *3 (E.D.N.Y. July 25, 2023) (The Second Circuit "has recognized 'a number of common law principles of contract law that may allow non-signatories to enforce an arbitration agreement, including equitable estoppel.'") (quoting *Doe v. Trump*, 6 F.4th at 412).

As to prong (2) of the second factor – a case which is difficult or of first impression— as this Court noted in its June 8 Ruling, in its decision in *Doe*, the Second Circuit "instruct[ed] district courts on how to resolve other comparable cases"— *i.e.*, those in which equitable estoppel has been applied to determine whether arbitration is required between a signatory and non-signatory. *James,*

---

[10] For example, in *Granite Rock*, the Supreme Court clarified that its "precedents hold that courts should order arbitration of a dispute only where the court is satisfied that neither the formation of the parties' arbitration agreement nor (absent a valid provision specifically committing such disputes to an arbitrator) its enforceability or applicability to the dispute is in issue." 561 U.S. at 299 (citation omitted). Moreover, in *Volt*, the Supreme Court stated that the FAA "simply requires courts to enforce privately negotiated agreements to arbitrate, like other contracts, in accordance with their terms." 489 U.S. at 478. "[T]he purpose of Congress in enacting the FAA was to make arbitration agreements as enforceable as other contracts, but not more so." *Id.* (citation and internal quotation marks omitted).

[11] *See, e.g., Choctaw Generation Ltd. P'ship v. Am. Home Assur. Co.*, 271 F.3d 403, 406 (2d Cir.2001) (discussing principles of estoppel under which a non-signatory to an arbitration agreement may compel a signatory to that agreement to arbitrate a dispute).

607 F. Supp. 3d at 186 (citing *Doe v. Trump*, 6 F.4th at 412). Accordingly, the June 8 Ruling follows Second Circuit precedent on how to decide the issue of estoppel in the context of a motion to compel arbitration. *See, e.g.*, *Choctaw Gen. Ltd.*, 271 F.3d at 406; *Ragone*, 595 F.3d at 126-27. The issue is not "of first impression within this Circuit." *Drake,* 736 F. Supp. 2d at 503.

Lastly, as to the third factor, there is no clear indication that reversal of the Ruling would advance the ultimate termination of the litigation. In the event of reversal, arbitration would not proceed. However, as one court noted in *Murray*, it may be that "the appeal process will take much longer than the arbitration, thereby extending the time in which a final decision on the merits is rendered." 2014 WL 1316472, at *7 (collecting cases). Also, if the appeal is lost or if the Second Circuit declines to hear it, "the result will be that this action will have been unnecessarily delayed by the interlocutory appeal." *Id.* In such circumstances, "interlocutory appeal would only delay adjudication of the merits of this action in the arbitral forum." *Id.*

Finally, in addition to the three statutory factors, the Second Circuit has provided that "only exceptional circumstances [will] justify a departure from the basic policy of postponing appellate review until after the entry of a final judgment." *Klinghoffer*, 921 F.2d at 25 (citation and internal quotation marks omitted); *see also Known Litig. Holdings, LLC v. Navigators Ins. Co.*, No. 3:12CV269 (JBA), 2013 WL 12284920, at *2 (D. Conn. Dec. 5, 2013) (same) (quoting *Klinghoffer,* 921 F.2d at 25); *Williston v. Eggleston*, 410 F. Supp. 2d 274, 276 (S.D.N.Y. 2006)) ("[T]he party seeking an interlocutory appeal has the burden of showing 'exceptional circumstances," to overcome the general aversion to piecemeal litigation, and to show that the circumstances warrant a departure from the basic policy of postponing appellate review until after entry of a final judgment.") (citations and internal quotation marks omitted).

Plaintiffs have failed to show any exceptional circumstances in the present case. Indeed, their primary argument for certification is their claim that "the Court's decision effectively terminates the ability for these consumer plaintiffs to get any effective relief . . . ." Doc. 44-1, at 9.  That is not true. Plaintiffs agreed in their Sunnova and Sun Power contracts to proceed in arbitration. Plaintiffs merely need to proceed to arbitration as set forth in those agreements.

## IV.  CONCLUSION

Plaintiffs have presented  no controlling decision or matter overlooked that would alter the Court's June 8 Ruling, 607 F.Supp.3d 182.  Therefore, and for all of the foregoing reasons, "Plaintiffs' Motion for Reconsideration or, Alternatively, for Certification of Appeal to the Second Circuit" [Doc. 44] is DENIED.

It is SO ORDERED.

Signed: New Haven, Connecticut
February 6, 2024

/s/Charles S. Haight, Jr.
CHARLES S. HAIGHT, JR.
Senior United States District Judge

24